In The United States District Court
For The District of Guam

Roland Abisia
       Petitioner,

v.

United States of America,
       Respondents.

:
:
:
:
:
:
:
:
:

CASE NO: CR/96-00089

CV **05-00041**

---

Petition Pursuant to 28 U.S.C. §1651
All Writs Act; 28 U.S.C. §2255; 28 U.S.C. §2241,
Extraordinary Writs Error Coram Nobis
Audita Querela

---

COMES NOW THE

Petitioner in the Above Cited Caption Humbly and Respectfully Files this Multi-Jurisdictional Petition.

Petitioner Abisia has filed a multi-jurisdictional petition for post-conviction relief for an illegal/unconstitutional federal sentence of 360 months he received in an illegal/unconstitutional manner, in the above numbered criminal case.

Petitioner being a virtually indigent, federal prisoner, unschooled and unversed in the practices and procedures of the law, brings this multi-jurisdictional petition to correct his illegal/unconstitutional sentence under 28 U.S.C. § 2241, petition for writ of habeas corpus; 28 U.S.C. § 2255, motion to vacate; 28 U.S.C. 1651, All Writs Act, petition for writ of coram nobis and petition for writ of audita querela; and, or any other jurisdictional statute, or vehicle which the Court could use to recharacterize petition in order to review its merits and grant Petitioner the lawful relief he requests.

Petitioner relies on the law cited in his petition pertaining to how the Court should treat his pro se petition. Petitioner also relies on the Court's ability to recharacterize his petition to fit the proper jurisdictional vehicle in which to bring his claims and issues regarding his illegal/unconstitutional sentence which he received in an unlawful and unconstitutional manner to the Court for review. Petitioner maintains that his illegal/unconstitutional sentence must be changed through this Court's granting him relief through this petition. Petitioner presents to this Court the following law in support of jurisdiction in this matter.

MEMORANDUM OF LAW IN SUPPORT OF PETITION

FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2241

**JURISDICTION & VENUE**

The Petitioner pleaded guilty to Conspiracy to Distribute Crystal Methamphetamine and was sentenced to a 360-month sentence. The Court imposed a 5 year term of supervised release. Petitioner brings this action under the "Savings Clause" of 28 U.S.C. §2255 in the form of a petition for writ of habeas corpus under 28 U.S.C. §2241, on the grounds that his Constitutional rights under the 5th and 6th Amendments; governments breach of plea agreement and ineffective assistance of counsel.

Petitioner's attorney was ineffective for his failure to research the applicable federal law, investigate the facts.

**ARGUMENT AND CITATION OF AUTHORITY**

I.      Article I, Section 9, Clause 2 of the United States Constitution and the "Savings Clause" of 28 U.S.C. §2255, Motion To

Vacate, give this Court the jurisdiction to entertain Petitioner Abisia's petition for writ of habeas corpus, pursuant to 28 U.S.C. §2241.

A.   BACKGROUND OF HABEAS CORPUS

A prisoner's right to habeas corpus relief was written directly into the U.S. Constitution in **Article 1, Section 9, Clause 2. Suspension of Habeas Corpus,** "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." In 1948, Congress divided the traditional prisoner's habeas corpus writ into two sections of U.S. Code, for the purpose of judicial efficiency. The first being **28 U.S.C. §2241**, which states, in part, "(c) The Writ of Habeas Corpus shall not extend to a prisoner unless-- (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court of judge of the United States; or (3) He is in custody in violation of the Constitution or laws or treaties of the United States;". Petitioner Abisia is in federal prison pursuant to an order of a U.S. District Court for an act committed against an Act of Congress and  he  is   in custody in violation of the Constitution and laws of the United States. Abisia, for practical purposes of the §2241 requirements has satisfied all (1), (2), & (3) of (c). 28 U.S.C. §2241 is to be used for matters other than those attacking a federal judgment or sentence, with the exception that it has been designated the proper vehicle to bring a claim under the "Savings Clause" of 28 U.S.C. §2255 to the court for proper relief. For attacking a

-3-

federal sentence Congress created **28 U.S.C. §2255**, and Congress, in its foresight and wisdom, created the "Savings Clause" of §2255, which states, "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." This clause is what has been termed the "safety valve" which prevents an occurrance where, as in Abisia's case, the possibility of suspension of habeas corpus might occur, in violation of Article 1, Section 9, Clause 2 of the U.S. Constitution. Without the use of §2255's "Savings Clause" or "safety valve", Haynie's Constitutional right to habeas corpus will, in effect, be suspended.

In footnote number 5, **LARSON v. UNITED STATES**, 275 F.2d. 673, at 676 (5th. Cir. 1960), U.S. Supreme Court Chief Justice Vinson opines in reviewing Section 2255, "As Stated in United States v. Hayman, and quoted in United States v. Morgan, 1954, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248, Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoner's rights of collateral attack upon their convictions." "Theoretically, it [habeas corpus] is effective only against judgments rendered without 'jurisdiction'". But courts have so expanded the common law concept of 'jurisdictional' defects that actually a prisoner can use the habeas writ against any judgment which violates due process or fairness in criminal proceedings.

-4-

In fact, recent decisions bypass the outmoded concept of juris-
diction and treat directly the constitutional issues involved.
Thus, the modern habeas writ and the motion under Section 2255 are
substantive equivalents".

While Petitioner does not challenge his plea of guilt, he
does challenge his sentence and the fact that he was not afforded
his right to effective counsel. The "Savings Clause" of §2255
states, "An application for a writ of habeas corpus in behalf of
a prisoner who is authorized to apply for relief by motion pur-
suant to this section, shall not be entertained if it also appears
that the applicant has failed to apply for relief, by motion, to
the court which sentenced him,...". Petitioner's unique situ-
ation within this matter renders this highly applicable. One, he
is filing his §2241 habeas petition in the same geographical
jurisdiction as he was sentenced in. Therefore, the sentencing
court is also the custodial court, which allows the Court to
entertain either form of relief. Also, it is highly arguable
that Abisia is unauthorized to apply for relief pursuant to §2255.
And, Petitioner's petition in this matter proves beyond any
argument or doubt that he has received an illegal, unconsti-
tutional sentence, in an unconstitutional manner. Therefore,
being unauthorized and inadequate or ineffective under §2255
Petitioner Abisia is entitled to invoke the "Savings Clause" of
28 U.S.C. §2255, giving this Court jurisdiction over this matter
under 28 U.S.C. §2241.

B.    "SAVINGS CLAUSE" OF 28 U.S.C. §2255

1.    Inadequate or ineffective-Extraordinary circumstances:

If a defendant's right to file an initial moton §2255 to
correct an illegal or unconstitutional sentence given in an

-5-

illegal or unconstitutional manner can be plead away as part of an unknowing, uninformed, and uneducated plea agreement, due to ineffective assistance of counsel, then §2255 has been rendered inadequate or ineffective. If motion §2255 can be lost to a defendant by an unscrupulous and incompetent attorney and an unsuspecting court then one can only assume that §2255 has simply been rendered inadequate or ineffective.

"Nowhere in the history of §2255 has Congress placed an absolute bar on prisoner's habeas corpus rights to seek post conviction relief from an illegal or unconstitutional sentence received in an illegal or unconstitutional manner resulting in a serious miscarriage of justice. "Nowhere in the history of §2255 doe we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions.", **UNITED STATES v. HAYMAN**, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, at 241. "Congress restricted (but did not eliminate) the right of federal prisoners to proceed under §2241(c)(3). See generally United States v. Hayman, 342 U.S. 205, 210-19, 72 S.Ct. 263, 267-72, 96 L.Ed. 232 (1952) (detailing the history and purpose of §2255). Section 2255 was not intended to limit the collateral rights of federal detainees in any way. It was simply designed to serve as a convenient substitute for the traditional habeas corpus remedy. See id. at 219, 72 S.Ct. at 272. Significantly, §2255 as originally enacted, and as amended by the AEDPA, contains an explicit exception to the general rule that federal prisoner must use §2255 instead of seeking a writ of habeas corpus under §2241.", **TRIESTMAN v. U.S.**, 124 F.3d. 361, at 373 (2nd. Cir. 1997).

-6-

Section 2255 is either inadequate or ineffective to test the legality or constitutionality of Petitioner's sentence, therefore he is authorized by the "Savings Clause" of §2255 to utilize §2241 for his claims of relief. "In a case where the §2255 procedure is shown to be "inadequate or ineffective," the Section provides that the habeas corpus remedy shall remain open to afford the necessary hearing.", **UNITED STATES v. HAYMAN**, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, at 244. "Section 2255 explicitly states that federal prisoners may resort to habeas corpus if, and only if, §2255 relief is inadequate", **IN RE HANSERD**, 123 F.3d. 922, at 933 (6th. Cir. 1997). "Still, "inadequate and ineffective" must mean something, or Congress would not have enacted it in 1948 and reaffirmed it in the AEDPA." "We no hold that "something" is, at the least, the set of cases in which the petitioner cannot, for whatever reason, utilize §2255, and in which the failure to allow for collateral review would raise serious constitutional questions." "And more generally, we encourage the district courts to continue to find that habeas corpus may be sought whenever situations arise in which a petitioner's inability to obtain collateral relief would raise serious questions as to §2255's constitutionality.:, **TRIESTMAN v. U.S.**, 124 F.3d. 361, at 376-77 (2nd. Cir. 1997). "Lorentsen is a federal prisoner. Section 2255 expressly provides that federal prisoner may seek habeas relief if it "appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.", **UNITED STATES v. LORENTSEN**, 106 F.3d. 278, at 279 (9th. Cir. 1997). Petitioner is a federal prisoner and is unable to use §2255 because in his case it has been rendered inadequate or ineffective.

-7-

The courts are not closed to a federal prisoner, who like Abisia, finds himself in exceptional circumstances where his case demands justice and the failure to do so creates a miscarriage of justice which raises serious constitutional questions. "Nor, however, does it keep the courts closed in cases where justice would seem to demand a forum for the prisoner's claim in so pressing a fashion as to cast doubt on the constitutionality of the law that would bar the §2255 petition. In reaching this result, we therefore respect Congress' intent to streamline collateral review and to discourage repetitive and piecemeal litigation, while at the same time we give meaning to Congress' express decision (reaffirmed in the AEDPA) to preserve habeas corpus for federal prisoners in those extraordinary instances where justice demands it. Cf. Schlup v. Delo, 513 U.S. 298, 322, 115 S.Ct. 851, 864-65, 130 L.Ed.2d. 808 (1995) (noting that in interpreting the law of collateral review, courts should "accomodate[] both the systematic interests in finality...and conservation of judicial resources, and the overriding individual interest in doing justice in the extraordinary case")", **TRIESTMAN v. U.S.**, 124 F.3d. 361, at 378 (2nd. Cir. 1997). "We suggested that the appropriate inquiry was whether the claimed error of law was "a fundamental defect which inherently results in a complete miscarriage of justice," and whether "[i]t... present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id., at 428, 7 L.Ed.2d. 417 (internal quotation marks omitted)., **DAVIS v. UNITED STATES**, 417 U.S. 333, 41 L.Ed.2d. 109, 94 S.Ct. 2298 (1974). The circumstances of Petitioner's illegal/unconstitutional sentence given to him in an illegal/unconstitutional

-8-

manner are certainly exceptional or extraordinary. Petitioner
must be afforded some type of review to obtain relief from his
illegal/unconstitutional sentence. The underlying issue, which
is the basis for Petitioner's quest for judicial relief involves
a fundamental defect and thus the fundamental legality of his
sentence, which enables the Court to grant review through habeas
corpus. "We do not suggest that §2255 would be "inadequate or
ineffective" so as to enable a second Petitioner to invoke
§2241 merely because that Petitioner is unable to meet the stri-
ngent gatekeeping requirements of the amended §2255. Such a
holding would effectively eviscerate Congress' intent in amend-
ing §2255. However, allowing someone in Dorsainvil's unusual
position - that of a prisoner who had no earlier opportunity to
challenge his conviction... - is hardly likely to undermine the
gatekeeping provisions of §2255". **IN RE DORSAINVIL**, 119 F.3d. 245,
at 251 (3rd. Cir. 1997). "The Seventh Circuit in Davenport
suggested in dicta that the savings clause might apply to some
claims involving a "fundamental defect" in sentencing where the
Petitioner had not had an opportunity to obtain judicial correct-
ion of that defect earlier. See 147 F.3d. at 611. We need not
decide whether the savings clause extends to sentencing claims
in those circumstances, or what a "fundamental defect" in a sent-
ence might be." **WOFFORD v. SCOTT**, 177 F.3d. 1236, at 1244-45
(11th. Cir. 1999). "In interpreting the savings clause, the Sev-
enth Circuit in Davenport looked to the essential function of ha-
beas corpus. It characterized that function as "giv[ing] a pri-
soner a reasonable opportunity to obtain a reliable judicial
determination of the fundamental legality of his conviction and
sentence." Davenport, 147 F.3d. at 609. The court stated that a

-9-

prisoner who "had a chance to raise the question" at issue in his appeal and his first §2255 petition had already had his reasonable opportunity." U.S. v. Barrett, 178 F.3d. 34, at 51 (1st. Cir. 1999).

2.    However, Petitioner is unaware of this Circuit's definitive ruling that governs the district court in a matter of habeas corpus that concerns use of §2255's savings clause in correcting a "fundamental defect and legality" of a sentence.  "However, other courts have not directly addressed whether the §2255 remedy is inadequate if a prisoner is afforded no reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction or sentence..." Jeffers v. Chandler, 234 F.3d. 277 at 281 (5th. Cir. 2000).

3.    It can be argued that Abisia is not authorized to proceed under §2255, in the savings clause itself.  "An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion..." **28 U.S.C. §2255**. In the case of the Petitioner, he is unauthorized through a serious miscarriage of justice and ineffective counsel pursuant to a plea agreement, to apply for relief under §2255. Which if the Court denies review under §2255, would effectively usurp the statutory intent of Congress that the Petitioner be authorized to seek habeas review under 28 U.S.C. §2255.

C. HABEAS CORPUS 28 U.S.C. §2241(a)(b)(c)

1.       Statutory provisions:

Under 28 U.S.C. §2241(a) this Court (the district court) has been given statutory authority to entertain and review a (this)

-10-

petition for writ of habeas corpus. Writ of habeas corpus extends to the Petitioner pursuant to 28 U.S.C. §2241(c)(1), (2), & (3) as the Petitioner is in custody under the authority of the United States; and he is in custody pursuant to a judgment of a court or judge of the United States; and he is in custody in violation of the Constitution and laws of the United States. Thus, under these statutory provisions Abisia's petition for writ of habeas corpus can be reviewed by this Court. The district court, in its discretion, can address Abisia's petition for writ of habeas corpus, the court court in its discretion can still address the merits of the petition when it believes that doing so will best serve the interests of "judicial efficiency, conservation of judicial resources, and orderly and prompt administration of justice..." Id. at 379. **SHAUGNESSY v. U.S.**, 93 F.Supp.2d. 1195, at 1197 (D.Wyo. 2000), citing from **U.S. v. ALLEN**, 16 F.3d. 377 (10th. Cir. 1994). Abisia has well established in his petition and through his cause and prejudice, due diligence, and miscarriage of justice portions of this memorandum that he has overcome the procedural bar, shown due diligence in this matter, and that failure to correct his illegal sentence will result in a miscarriage of justice. U.S. law and justice dictate that Abisia must be given relief from his illegal sentence, it is just a matter of how it is done. Therefore, the willful failure of this Court to assume jurisdiction will constitute a wanton waste of valuable judicial resources and willful perpetuation of the miscarriage of justice in this matter.

The fundamental purpose of habeas corpus is to correct an error that affects the duration of confinement. Abisia has

-11-

overwhelmingly established that his illegal/unconstitutional sentence will severely affect the duration of his confinement. The Fifth Circuit has said about habeas corpus, "In short, because the alleged error affects the duration of confinement, a section §2241 claim is more closely related to other habeas claims brought pursuant to sections §2254 and §2255 than claims challenging conditions of confinement." **DAVIS v. FECHTEL**, 150 F.3d. 486, at 490 (5th. Cir. 1998). "That the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." **PREISER v. RODRIGUEZ**, 411 U.S. 475, at 484, 93 S.Ct. 1827, at 1833, 36 L.Ed.2d. 439 (1973). To correct the miscarriage of justice Abisia is experiencing in this matter, the district court must hear the merits of his case or the miscarriage of justice will forever go unresolved. "Henceforth, in such cases a prisoner brings an action in the nature of habeas corpus - or he brings no federal action at all." Id. at 1843.

II.   VENUE IN THE DISTRICT COURT FOR THE TERRITORY OF GUAM IS APPROPRIATE.

A.   28 U.S.C. §2241(a) states that venue for Abisia's petition for writ of habeas corpus is the U.S. District Court for the Territory of Guam. "...Writs of habeas corpus may be granted by... the district courts...within their respective jurisdictions." **28 U.S.C. §2241(a).** "An inquiry into whether a §2241 petition is proper under these circumstances is critical to the determination of district court jurisdiction, because the proper district for filing a habeas petition depends upon whether the petition is filed pursuant to §2241 or §2255. In particular, a habeas petition

-12-

filed pursuant to §2241 must be heard in the custodial court (here...), even if the §2241 petition contests the legality of a sentence by falling under the savings clause." **HERNANDEZ v. CAMPBELL**, 204 F.3d. 861, at 865 (9th. Cir. 2000).

III.   <u>CONSTITUTIONAL ISSUES (QUESTIONS)</u>

Constitutional questions arise when habeas corpus may have been suspended, depriving a prisoner from relief of constitutional violations in his sentence and the manner in which he received it. Especially when the results of the violations manifest themselves in the prisoner's longer, harsher sentence that creates a serious miscarriage of justice. Abisia has, undoubtably, received an un- constitutional sentence in an unconstitutional manner, that has re- sulted in his having been given a substantially greater sentence which can easily be termed a serious miscarriage of justice.

A.   Failure to afford Abisia relief from the unconstitutional portion of his sentence he received in an unconstitutional manner would constitute "suspension" of habeas corpus, contrary to Article I, Section 9, Clause 2 of the United States Constitution. If this Court denies jurisdiction of Abisia's petition, on all the avenues Abisia presents to the Court to entertain his petition, then habeas corpus has been suspended which brings into question the continuing validity of 28 U.S.C. §2255. This question has been brought to the attention of many other courts in the history of §2255, all of which have found an avenue to afford the prisoner relief, thus preventing the constitutionality of §2255 to be called into question, because habeas corpus cannot be suspended. Speaking of habeas corpus, the U.S. Supreme Court has said, "The writ today appears in a proper procedural manner."

-13-

McCLESKEY v. ZANT, 499 U.S. 467, at 479, 111 S.Ct. 1454, 113 L.Ed.2d. 517, at 534 (1991). Abisia has made his dispositive constitutional claims in a proper procedural manner cognizable under habeas corpus. The U.S. Supreme Court has further held, "There being no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for a writ of habeas corpus, the power and inquiry on Federal Habeas Corpus is plenary, and petitioners in habeas corpus proceedings are entitled to a full opportunity for presentation of the relevant facts." HARRIS v. NELSON, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed. 281. "The question of an unlawful sentence is never barred." ROSENBERG v. U.S., 346 U.S. 273, at 312, 97 L.Ed. 1607, 73 S.Ct. 1152 (1953). "This Court has constantly emphasized the fundamental importance of the writ of habeas corpus in our constitutional scheme, and the Congress has demonstrated its solicitude for the vigor of the Great Writ. The Court has steadfastly insisted that "there is no higher duty than to maintain it unimpaired." BOWEN v. JOHNSTON, 306 U.S. 19, 26, 83 L.Ed. 455, 461, 59 S.Ct. 442 (193(), JOHNSON v. AVERY, 393 U.S. 483, at 485, 89 S.Ct. 747, 21 L.Ed.2d. 718, at 721. (196().

B. The failure to afford Abisia the relief requested within his petition will call into question the federal justice system and the integrity of the federal courts. It is certain that Abisia suffers from two violations of his U.S. constitutional rights.

2. EQUAL PROTECTION OF THE LAW

Failure to afford Abisia the relief he seeks in this petition constitutes a violation of his right to equal protection of the law. The Congress, in its enactment of the Sentencing Reform Act of 1984 sought to relieve the great disparities of the

-14-

previous laws and reduce the litigation of the magnitude of in-
dividuals who were given disparate sentences. "The Sentencing
Reform Act of 1984 revolutionized the manner in which district
courts sentence persons convicted of federal crimes."
BURNS v. UNITED STATES, 501 U.S. 129, at 132, 114 L.Ed.2d. 123, at
129, 111 S.Ct. 2182 (1991).

Congress intended that this "new law of sentencing" be applied
to all federal prisoners since its enactment and would therefore
end the previous disparity of sentences. To apply the U.S.
Sentencing Guidelines to some prisoners, and not to others, violates
the Constitution's equal Protection Clause. Abisia has a Const-
itutional right to expect a sentence properly calculated under the
guidelines. Failure to grant Abisia the relief he requests within
this petition will result in a disparity in his sentence and a
violation of his equal protection of the law rights. "Moreover,
the mandatory guideline sentencing system created by the Sentencing
Reform Act of 1984 creates such expectations that defendant
enjoys a constitutionally-protected liberty interest in being sent-
enced according to the guidelines." U.S. v. MELANCON, 972 F.2d.
566, at 577 (5th. Cir. 1992). See generally Burns v. United States,
501 U.S. 129, 115 L.Ed.2d. 123, 111 S.Ct. 2182 (1991).

IV.    JUDICIAL REVIEW AND A DETERMINATION OF THE MERITS ON THE
INADEQUATE OR INEFFECTIVENESS OF §2255 IS NECESSARY.

The Court is required to rule on the merits of Abisia's claim
that §2255 is inadequate or ineffective. "Although we have not
defined precisely what renders the §2255 remedy inadequate or in-
effective." See United States v. Pierro, 104 F.3d. 297, 299 (9th.
Cir. 1997), the statute specifically contemplates that such

-15-

instances may arise:  Where a petitioner claims that §2255 pro-
vides an ineffective remedy, the district court in which the
petition is brought is required initially to rule whether a
§2241 remedy is available under the savings clause."
**HERNANDEZ v. CAMPBELL,** 204 F.3d. 861, at 866 (9th. Cir. 2000).
The Court must determine whether Abisia may proceed under §2241.
"Hooker is entitled to a judicial determination whether he may
proceed under §2241, and that determination can only be made in the
district where he is incarcerated." **HOOKER v. SIVLEY,** 187 F.3d.
680, at 682 (5th. Cir. 1999).

MEMORANDUM OF LAW IN SUPPORT OF PETITION PURSUANT TO
28 U.S.C. §1651 ALL WRITS ACT: 28 U.S.C. §2255; 28 U.S.C. §2241

EXTRAORDINARY WRITS ERROR CORAM NOBIS/AUDITA QUERELA

Petitioner Abisia plead guilty to Conspiracy to Distribute
Crystal Methamphetamine in violation of 21 U.S.C. 841(a)(1) and
846, and was sentenced to 360 months.  The Court also imposed a
five (5) year term of supervised release.  Petitioner Abisia
brings this action under 28 U.S.C. §2255(4) which states, "A
prisoner in custody under sentence of a court established by Act
of Congress claiming the right to be released upon the ground that
the sentence was imposed in violation of the Constitution or laws
of the United States, ....., or is otherwise subject to collateral
attack, may move the court which imposed the sentence to vacate,
set aside or correct the sentence.....  A one year period of
limitation shall apply to a motion under this section.  The limi-
tation period shall run from the latest of - (4) the date on which
the facts supporting the claim or claims presented could have
been discovered through the exercise of due diligence.

-16-

At the change of plea hearing the key element of this case is
described and Abisia is ready to argue his claims. The Court:

> You know this outstanding element out there that
> can lay the ground work for another change of
> heart later on, and I'm trying to find out here
> whether those things have been resolved. Now
> with respect to the FBI coercing him into plead-
> ing guilty because his common-law wife would be
> picked up, let me point out that the common-law
> wife was a federal fugitive at the time. And so
> that seems to be rather absurd that that can be
> used as a threat when action is already being
> taken to do that now, I need to find out, you
> mentioned something like a _Bivens_ action. That's
> bothersome to the court. I'm trying to make sure
> that we keep these folks honest as well. I have
> no reason to doubt them but I need to find out.
> was he coerced or not? I guess that's what be-
> if not then, okay that's a different story.

Ms. Lynch: I understand.

The Court: If he was coerced, then lets get to the bottom of
it now while we have people here, they're ready to go and we
can get to the bottom of it. **See plea hearing transcripts,
exhibit-A -pages 1-14:** .

At this point counsel failed to explain everything in full
detail about Abisia being coerced. Counsel failed to argue the
point at a critical stage in the proceedings. Counsel was aware
of the fact that Abisia had been threaten, ( by this serious
misconduct of government officials, and never said a thing about
what happen. She failed to bring this issue to the Courts att-
ention.

Even after the Court consistently time and time again ask-
ed counsel was her client "coerced". Counsel remain silent and
never told the court everything that happen. Moreover, when
Abisia requested to counsel that he wanted to tell the Court
what happen Mrs Lynch said to him quote: " To shut up and keep
his mouth close". This satement made by counsel to petitioner
Abisia should entitle Abisia to the relief he seeks because...

17

because counsel prevented Abisia's from bringing this issue to

the courts attention. Had Abisia been allowed to speak he

could have explained everything to the court at that time. Abisia

trusted Mrs. Lynch and she failed to argue this issue. She was

Mr. Abisia's "advocate" (at least he thought she was).

Abisia is entitled to an evidentiary hearing on his claim

unless the motion and files and records of the case conclusively

show that the prisoner is entitled to no relief." 28 U.S.C. ,

§2255 (1988). "When a defendant's allegations are based on facts

outside the record, an evidentiary hearing is required." See,

Frazer v. U.S. 18 F. 3d. 778 (9th Cir. 1994). citing Doganiere,

v. United States, 914 F. 2d. 165, 168 (9th Cir. 1990) (citing,

United States v. Espinoza, 866 F. 2d. 1067, 1069 (9th Cir. 1988).

(Cert. denied, 499 U.S. 940, 111 S. Ct. 1398, 113 Led. 2d. 454

1991).

Mr. Abisia must be given an opportunity in the form of an

evidentiary hearing to attempt to prove his allegations. Frazer,

18 F. 3d. 781. The right to counsel guaranteed by the constit-

ution, however means more than just the opportunity to be phy-

sically accompanied by a person privileged to practice law. See,

Strickland v. Washington, 466 U.S. 668, 685, 104 S. Ct. 2052,

2063, 80 Led. 2d. 674 (9184).

"That a person who happens to be a lawyer is present, at

the trial alongside the accused is not enough to satisfy the

constitutional command). Powell v. Alabama, 287 U.S. at 58, 53

S. Ct. at 60.

18

(indigent defendants provided with unprepared and pro forma

lawyers were not accorded the right to counsel in any sub-

stantial sense). Thus, an accused is entitled to be assisted by

an attorney, whether retained or appointed, who plays the role

necessary to ensure that the trial is fair". Strickland, 466 US,

at 685 104 S. Ct. at 2063.

In other words, the assistance to which a defendant is en-

titled must be effective." Id. at 686, 104 S. Ct. at 2064, un-

hindered either by the state or by counsel's constitutionally

deficient performance. This required performance contemplates

open communication unencumbered by unnessary impediments to the

exchange of information and advice. See Javor v. United States,

724 F. 2d. 831, 834, (9th Cir. 1984).

Here at bar, Counsel advised "Abisia"to "shut up, and keep

his mouth shut." Counsel prevented Abisia the opportunity to ex-

change any information and she gave him "gross misadvice" in not

to say anything about the threats from the (FBI) and the coercion.

Mr. Abisia was "misled" by erroneous advice . This misadvice de-

prived Abisia of his Constitutional right to effective assistance

of counsel. Moreover, when Abisia and his lawyer Miss Lynch met

with the probation officer to prepare the (PSI) for sentencing

the probation officer attributed over 3,000 grams of meth to

Abisia. When Abisia realize what had happen he immediately brought

this to counsel attention.

Counsel advised Abisia not to argue just leave it alone be-

cause regardless whether the amount of "Meth" is 3,000 grams or

6,000, or even 10,000 grams he would "only get 10-years. Mr.

Abisia received a 30-year sentence and this was his first time

19

ever being in trouble. He has no prior arrest. Mr. Abisia has been incarcerated for 9½ years to this date.

GROSS MISADVICE:

The tentative agreement was that Abisia would pled guilty and receive a 10-year sentence. Abisia "urged" counsel to "object" and argue that he should not be held responsible for the 3,000 grams or more of meth. Abisia did not want to accept responsibilty for this amount because he felt that he was not responsible, but after Miss Lynch told him that it did not matter how many grams it was that he would only get 10-years he "trusted what she had said and agreed to leave it alone and accept responsibiltiy for the 3000, grams or more of Meth.

Abisia persistently told counsel to object to the over 3,000 grams or more. Abisia contends that this amount was not forseeable to him. Counsel ignored Mr. Abisia's request and told Mr. Abisia to just be quite and leave it alone. No matter the amount that probation put in the (PSI) he would only get 10-years. **(Mr. Abisia contends that if their be any dispute that what he is saying in this motion about what Miss Lynch told him in regard to the amount of meth, or at the change of plea then he request that Miss Lynch submit an affidavit under the penalty of perjury that what he said she said is not true.)**

"When a defendant's allegations are based on facts outside the record, an evidentiary hearing is required". Frazer v. U.S., 18 F. 3d. 778 (9th Cir. 1994). "Judgement of conviction must be vacated when it appears that a guilty plea would never have been tendered if defendant had been properly advised." Strader, v. Garrison, 611 F. 2d. 61 (1979).

20

"When the misadvice of the lawyer is so gross as to amount
to a denial of the Constitutional Right to the effective ass-
istance of counsel leading the defendant to enter an improvid-
ent plea, striking the sentence and permitting a withdrawal of
the plea seems only a necessary consequence of the deprivation
of the right to counsel. Deprivation of the constitutional right
cannot be left unredressed". <u>Strader,</u> 611 F. 2d. 61, at 65 (1979).

(Mr. Abisia contends that he does not wish to vacate the plea
he only seeks to be granted some type of relief from the denial
of his sixth amendment right to effective assistance of counsel).
"Appointed counsel owes the client a duty of loyalty. This duty
of loyalty has been described as perhaps the most basic of
counsel's duties". <u>Strickland,</u> 466, US at 692, 104 S. Ct. at
2067.

(FBI COERCION):

Abisia contends that had he been allowed to tell the court
what happen in regard to the coercion by the (FBI) "Drug enfor-
cement adminstration)" in it's entirety he would have been
granted a significant downward departure, he would have received
a much lower sentence then he received. Moreover, his issues
the (coercion) would have been  preserved for direct appeal and
the issues he raised on appeal would have been found to be merit-
ourous by the appeals court, and the government would have been
ordered by the court to grant Abisia a significant departure.

<u>GOVERNMENTS BREACH OF PLEA AGREEMENT:</u>

"Where a plea agreement provides that the government will
file a motion for departure for substantial assistance to auth-
orities if it determines that the defendant has provided.....

21

substantial assistance a court's review of the government's decision not to file such a departure motion is more searching; the court may review the agreement to see if the government has lived up to its end of the bargain; and will inquire also whether the government acted fairly and in good faith. U.S.S.G. §5K1.1, 18 U.S.C.A. As a remedy for the government's breach of the plea agreement <u>Abisia</u>(seeks to be credited time served, and released from federal custody) or compel the government to do what it should have done move for departure.

Abisia was told that he would only receive a 10-year sentence and the plea agreement specifies this fact. Mr. Abisia has no prior criminal record has maintain clear conduct in prison since being incarcerated for 9½ years. He has also supplied certificates of his accomplishments. See **exhibit-B copy of all certificates.**

Abisia contends that he has been punished enough and that he deserves another chance at life. (" In addition he gave the government all of his money (savings) cars ect. as part of his plea agreement). Counsel failed to even bring this issue up at Abisia's sentencing hearing. Abisia will argue this issue under ineffective assistance of counsel later in this same petition.

The pre-sentence report dated April 8, 1997 mimicked the details of the plea agreement which stated thathe government would recommend the minimum term of ten years under the guildlines if Abisia provided full and truthful co-operation. Mr. Abisia contends that it was just the opposite and he received no significant departure that he received a sentence of 360, months, and has been incarcerated as of to date for 9½ years.

22

Thge government promised him a departure if he co-operated

(and he did) to the best of his ability. The government in turn breach the plea agreement and stated that Abisia "Failed" to provide substantial assistance. Moreover, the government stated that their reason also was because Abisa had lied to the grand jury. But the government never indicted' him for obstruction of justice. If any thing Abisia may have denied some guilt of his own. (If anything Your Honor).

Mr. Abisia never "hindered" their investigation in any kind of way or sent them on any wild goose chase to arrest someone. Mr. Abisia assisted the government in a major drug "bust" of other individuals who was indicted and prosecuted because of Abisia's assistance.

Note: (Mr. Abisia did receive a departure (downward) but the departure Abisia received "cannot" be considered any benefit to him after he assisted the government in it's investigation and forfited all of his assess. The government had Abisia "not" pled guilty and agreed to co-operate would have argued for a sentence of 405-months. Even after Mr. Abisia pled guilty and assisted the government in other arrest of other people he received a sentence of 360-months (30-years).

With all due respect to this most Honorable Court this is absurd after all Mr. Abisia has done, as part of his agreement to co-operate. Mr. Abisia received no benefit from his co-operation. If anything the government use this man and made a "fool" out of him after he risk his life (setting up drug buys).

FBI officials transported Abisia to a housing area and...

23

waited for a man known to him as "Fred Leon Guerero" who had taken Abisia's youngest child from the mother in law's house, and brought him to the scene of a potential bust, a place were Mr. Abisia was to <u>set up</u> his supplier.               The agent stated to Abisia quote: **(You have two choices, you tag along with them and set up your supplier or <u>"we will take"</u> your baby boy away for good, and that the supplier would be arriving soon.)**

Mr. Abisia was forced to co-operate with the government threaten by the "Drug Enforcement Administration" to set up a major drug dealer(s). The (FBI) threaten to take this mans son. Mr. Abisia was forced against his will to co-operate, and has suffered mental anguish" as a result. Mr. Abisia will argue more in regard to the (FBI) coercion later on in this petition under ineffective assistance of counsel. Counsel was well aware of the potential threats, the coercion, and Mr. Abisia being forced against his will to co-operate with the government. Counsel failed to bring this issue to the Court's attention at the change of plea, and at sentencing even after the Court asked counsel numerous "times" did this in fact happen.

Mr. Abisia practically "begged" counsel to let him explain to the Court everything that happen in regard to the threats and the coercion but counsel Miss Lynch told him quote: **Keep your mouth shut I will handle everything.** "When a defendant's allegations are based on facts outside the record an evidentiary hearing is required". <u>Frazer v. U.S.</u> 18 F. 3d. 778 (9th Cir. 1994).

Mr. Abisia set the meeting up with one of his drug suppliers active on the island of Guam, and moreover, made a controlled buy "monitored" by Federal Agents this indiviual was arrested and...

24

prosecuted. Abisia testified to a Federal Grand Jury for hours
detailing his activities in drug trafficking and naming
accomplices. The portions of transcripts from Abisia total 112,
pages, and his testimony was crucial to the indictment of his
supplier and other's. The government failed to move for a sign-
ificant downward departure under the terms of the plea agreement.

Miss Lynch "lied" to Abisia gave him "grossmisadvice" and
told him whether it's 3000 grams or 10,000 grams he still would
only receive 10-years. The government in order to cover their
back said well we did "give Mr. Abisia a downward departure for
his assistance, yes they did (but they gave thuis man 360-months
or more over 3-decades in prison after all he had done to assit
them in other arrest and then they had the "adacity" to say well
we could have gave him 400, or more months.

Mr. Abisia ask this court to look at the circumstances of
this case and then look at the difference between 360-months
and 405-months thats only about a 40-month difference. The
government stated that that was all Mr. Abisia deserved as a
downward departure under the plea agreement because Abisia re-
fused and failed to fully cooperate.

This court should inquire whether the government acted
fairly and in good faith. See United States v. Brechner, 99,
F 3d. at 99. "Where the explicit terms of a co-operation agree-
ment leave the acceptance of the defendant's performance to the
sole discretion of the prosecutor, that discretion is limited
by the requirement that it be exercised fairly and in good faith".
United States v. Khan, 920 F 2d. 1100, 1105 (2nd Cir. 1990).

25

Cert. denied, 499 U.S. 969, 111 S. Ct. 1606, 113 Led. 2d.

669 (1991). Plea agreements and co-operation agreements may usefully be interpreted with principles barrowed from the law of contract". United States v. Khan 920 F. 2d. at, 1105; United States v. Rexach, 896 F. 2d. 710 713-14 (2nd, Cir.) [Co-operation agreements like plea bargains, are interpreted according to principles of contract law]. Cert. denied 498 U.S. 969, 111 S. Ct. 433 112 Led. 2d. 417 (1990).

Because there is an implied obligation of good faith and fair dealing in every contract the prosecution determination that it is dissatisfied with the defendant's performance under the co-operation agreement may not be reached dishonestly or in bad faith". Khan, 920 F. 2d. at 1105; See, also Rexach, 896 F. 2d. at 714 (a prosecutor's determination of dissatisfaction cannot be made invidiously or in bad faith).

Mr. Abisia was "intimitated", coerced under duress, when he set up a drug deal with one of his suppliers. "Duress" is the condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive one of the exercise of his or her free will." Rissman v. Rissman, 213 F. 3d. 381 (7th Cir. 2000).

"Freedom of will is essential to the validity of an agreement". 17A Am Jur 2d. §218. Mr. Abisia has been the victim of a wrongful unlawful act a threat of a kind which deprived him of his unfettered will with the result that he make a disproportionate exchange of values. Abisia "involuntarily accepted the terms of the (FBI) to...

26

co-operate in a drug buy of one of his suppliers and other(s), because the circumstances permitted no other alternative, more importantly the circumstances were the result of the coercive act of the (DEA)(FBI) with "threats" of , (taking Mr. Abisia's small son from him). The government officials staged a morality play .

See, Vasapolli v. Rostoff, 39 F. 3d. 27 (1st Cir. 1994). The facts demonstrate that the government ignored Abisia's co-operation and infact, acted in a manner that suggest that the government had no real interest in Abisia's co-operation. The plea agreement was a "contract" and set forth what was expected of Abisia's concerning his co-operation. The agreement required that Abisia provide complete and truthful information regarding his knowledge of criminal activity including distribution of "methamphetamine".

He was also required to submit to interviews and to testify truthfull before the grand jury. Abisia even assisted in a drug buy that was monitored by the (DEA), and netted the arrest of a guy name miranda. "Where the explicit terms of a co-operation agreement leave the acceptance of the defendants performance to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith". U.S. v. Harris, 188 F. Supp. 2d. 294 (W.D.N.Y. 2001).

27

Mr. Abisia was indicted on charges of Conspiracy to distrib-
ute Crystal Methamphetamine under 21 U.S.C. §841 (a),
(1) and §846 on October 1, 1996. Abisia was arrested on Oct-
ober 8, 1996 and held in custody on Guam until his first app-
earance before the U.S. District Court of Guam on October, 9,
1996. On the same day of his arrest, Mr Abisia negotiated a
plea agreement with the U.S. Attorney's office on Guam.

He agreed to plead guilty to the Complaint and to co-
operate with federal investigators. The plea agreement was
signed by both parties on October 8, 1996. On October 9, 1996,
Abisia appeared before the U.S. District Court Judge, John,
S. Unpingco, and waived indictment and entered his guilty
plea, which the court accepted.

Abisia was remanded to the custody of the F.B.I. for up
to 72-hours so that he could "cooperate" in an ongoing in-
vestigation of drug trafficking on Guam, then remanded to the
U.S. Marshall Service for removal to the mainland U.S. for
security purposes. On October 10, 1996, Abisia moved to with-
draw his plea of guilty. On October 11, 1996, the Court mod-
ified its detention order by allowing Abisia phone contact
with his lawyer only, and by segregating him from others at
the federal detention center on Guam.

On October 15, 1996, the government filed an opposition
to Abisia's motion to withdraw his guilty plea. Abisia with-
drew his motion the same day. On October 30, 1996, Abisia
testified before a federal grand jury, after which the gov-
ernment moved to unseal the record.

28

On November 25, the court revised the Detention Order permitting Abisia to have phone contect and visits from his family. On January 17, 1997, Abisia, through his new attorney, moved again to withdraw his guilty plea. The government filed its opposition on February 7, 1997. On March 14, 1997, Abisia withdraws his motion through his counsel.

The government had no objection and the court granted Abisia's motion to withdraw his motion to withdraw guilty plea. The court ordered a pre-sentence report to be filed by April 4, 1997. The report was transmitted April 8, 1997. Sentencing was held on May 27, 1997.

The notice of appeal followed on June 3, 1997. In regard to October 10, 1996, Abisia filed his first motion to withdraw his plea of guilty. Mr. Abisia claimed he had not had sufficient time to consider his plea, and that he was _pressured_ by federal agents. He also claimed that he did not fully understand the nature and extent of the co-operation required of him.

On October 15, 1996, Defendant withdrew his motion to withdraw his plea. While in F.B.I. custody, Abisia set up a meeting with one of the drug suppliers active on Guam, and made a controlled "buy" monitored by the federal agents, Abisia knew the supplier only as _Dennis_ , but after the agents arrested "Dennis" they discovered his real name is "Miranda".

On October 30, 1996, Abisia testified for several hours before a federal grand jury detailing his activites in drug trafficking, and naming accomplices. The portions of grand jury transcripts from Abisia total 112 pages, and his testimony was "very crucial" to the indictment of Miranda and plenty others.

29

Abisia retained another attorney, who appeared in December,
1996, and who filed for Abisia on January 17, 1996 his
second motion to withdraw his guilty plea. The government opp-
osed both motions, arguing that Abisia should be required to
abide by the agreement. Abisia retained the undersigned counsel
who appeared with him on March 14, 1997 and informed the Court
that Abisia would abide by the guilty plea.

The government did not object and the court permitted
Abisia to again withdraw his motion. The pre-sentence Report
dated April 8, 1997 mimicked the details of the plea agreement.
Which stated that the government would recommend the minimum
term of ten years under the guidelines if Abisia provided full
and truthful cooperation.

The agreement also stated that should Abisia's co-operation
meet the level of substantial assistance, the government agreed
to move the court for a downward departure from the statutory
minimum sentence. The government responded to the pre-sentence
report by adopting it.

At the sentencing hearing, however, the government refused
to recommend the minimum term of incarceration under the guide-
line. The government justified its refusal by claiming that
Abisia was not truthful in his grand jury testimony because he
stated that he was set up by someone. The government also claimed
that Abisia refused and failed to fully cooperate because he
moved to withdraw his guilty plea twice.

The government also failed to move for downward departure
under the plea agreement.

30

Abisia objected to the government's failure to abide by the plea agreement. The court stated that it found that defendant provided substantial assistance, yet his role in the offense warranted 360-months incarceration. The meaning of a plea agreement at least its facial meaning is reviewd de novo, in the appeals court". United States v. Western Electric Co. (D.C., Cir. 1990), 900 F. 2d. 283, 293.

Whether the government has violated a plea agreement is a question of law. United States v. Cooper, (10th Cir. 1995), 70 F. 3d. 563, 565. United States v. Belt, (10th Cir. 1996) 89, F. 3d. 710, 713. Whether the government's conduct violates the terms of a plea agreement is a question of law." United States, v. Badaracco, (3rd Cir. 1992) 954 F 2d. 928, 939.

A breach of plea agreement constitutes plain error. See, United States v. Goldfaden, (5th Cir. 1992) 959 F. 2d. 1324, 1328. United States v. Valencia, (5th Cir. 1993) 985 F. 2d. 758, 760.

## THE PLEA AGREEMENT IS A CONTRACT WHOSE TERMS MUST BE KEPT:

This case involves a signed plea agreement, excuted by a defendant agreeing to plead guilty to a felony charge, and to cooperate with the federal government, and by the government agreeing to make certain affirmative recommendations at sentencing in exchange for the guilty plea and cooperation.

Both parties accepted the terms of the agreement, and agreed to be bound by those terms. A plea agreement is a contract. See United States v. Anderson, (9th Cir. 1992), 970 F. 2d. 602, 606, citing United States v. Keller, 902 F. 2d. 1391, 1393, (9th Cir. 1990). Any dispute over the terms of the contract will be determine by objective standards.

31

United States v. Goroza, 914 F. 2d. 905, 909 (9th Cir. 1991)

citing United States v. Read, 778 F. 2d. 1437, 1441, Cert. denied (1986) 479 U.S. 835, 93 Led. 2d. 75, 107 S, Ct. 131. Issues concering the interpretation and enforcement of plea agreements are issues of law. United States v. Coleman, 895 F. 2d. 501 505 (8th Cir. 1990).

A plea agreement is more than merely a contract between two parties, however, and must be attented by Constitutional safeguards to ensure a defendant receives the performance he is due. United States v. Thournout, 100 F. 3d. 590 (8th Cir. 1996) citing from U.S. v. Britt, 917 F. 2d. 353, 359 (8th Cir. 1990).

Among the constitutional safeguards is the due process requirement that "when a plea rest in any significant degree on a promise or agreement of the prosecutor..such promise must be fulfilled. Santobello v. New York, (404 U.S. 257 30 Led. 2d, 427, 92 S. Ct. 495. As part of the contract, the government agreed that, if Mr. Abisia co-operated with the Government as provided in Paragraphs (2), and (3) of the plea agreement, the government would recommend that defendant received the minimum term recommended by the sentencing guidelines.

Yet at the sentencing hearing, the assistant United States Attorney who prosecuted the case not only did "not" recommend the minimum term, he argued for the maximum sentence, and introduced documentary allegations of untruthfulness as to allege that Abisia had breached the agreement.

The government gave no notice of its intentions to breach the agreement, nor of its intention to refuse to abide by specific terms of the agreement.

32

Prosecutors may not breach promises made in plea agreements. See United States v. Childs, 5 F. 3d. 1328 (9th Cir. 1993); citing Santobello. Santobello, is the leading authority compelling a prosecutor to fulfill his plea-bargain promises to a defendant. In Santobello, the Supreme Court held:

> **When a plea rest in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the indictment or consideration, such promise must be fulfilled.**

Id. 404 U.S. at 262, 30 Led. 2d. at 433.

By its failure to recommend a minimum term, the government breached its promise under the plea agreement with Mr. Abisia. The government did not perform as it had promised that it would. Each breach is a seperate act constituting reversible error.

In construing an agreement, the court must determine what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty." U.S. v. De La Fuente, 8 F. 3d., 1333, 1337 (9th Cir. 1993). De La Fuente, was a Guam case where the government breached its plea agreement by failing to request a sentence below the statutory mandatory minimum on the basis of substantial assistance.

Focusing on the defendant's reasonable understanding reflects the proper focus on what induced the defendant to plead guilty. Mabry v. Johnson, 467 U.S. 504, 104 S. Ct. 2543, 81 Led. 2d. 487 (9184). The Ninth Circuit has a long history of requiring federal prosecutors to keep their plea-agreement promises to defendants. United States v. Gerard, (9th Cir. 1974), 491 F. 2d., 1300, 1303.

33

In _Gerard_, as in the case at bar, the government challenged a plea bargain defendant's credibility as a witness. Whatever is the commitment must be kept. _Santobello v. New York_, 404 U.S. 257, 30 Led. 2d. 427, 92 S. Ct. 495; _United States v. Goodrich_, (9th Cir. 1974), 493 F. 2d. 390, 393 (appeal from a jury conviction, when the prosecution makes a deal within its authority and the defendant relies on it in good faith, the court will not let the defendant be prejudiced as a result of that reliance); See _United States v. Garcia_, (9th Cir. 1975), 519 F. 2d. 1343, 1345, (involving a deferred plea); _United States v. Travis_, (9th CIr. 1984), 735 F. 2d. 1129, 1132, ("the government will be held to the literal terms of the agreement"); _United States v. Read_, (9th Cir. 1985), 778 F. 2d. 1437, 1441; _United States v. Anderson_, (9th Cir. 1992), 970 F. 2d. 602, 607.

## THE PETITIONER KEPT HIS PART OF THE BARGAIN:

As a result of Mr. Abisia's cooperation the supplier was indicted and convicted. Mr. Abisia expected that his cooperation would in turn entitle him to a lesser sentence than that establish-ed by the federal sentencing guidelines. Mr. Abisia's expectation was based on the terms of the plea agreement itself.

> Paragraph (2) required defendant to cooperate with fed-eral agents, including testifying before any grand juries or trials. In exchange, the government was required to make the defendant's cooperation known to the court prior to sentencing.

> Paragraph 5, of the plea agreement provides, in part:

> If defendant cooperates as set forth in paragraphs 2, 3 and 4, the government will recommend that defendant re-ceive the minimum term of incarceration recommended by the sentencing guidelines...The government may move for a down-ward departure if the defendant renders substantial assist-ance pursuant to Section 5K1.1..

The government also....

agreed not prosecute defendant for any non-violent federal off-
enses known or revealed during his cooperation. In Paragraph 3,
of the plea agreement, Abisia agreed that "any and all assets"
aquired or obtained as direct or indirect result of drug traff-
icking or used to facilitate such activity would be surrendered
to the United States.

Mr. Abisia gave the government over 1-mill-in total forfeture.
Mr. Abisia also gave up his rights to a trial, waived any right
to appeal or attack his conviction, and waived any rights to a
speedy sentencing. He was therefore entitled to enforcement of
the plea agreement.

Mr. Abisia got nothing that he "bargained for. The govern-
ment made "mockery" of this man. The government led Abisia to
believe he was facing ten years, and more importantly Miss Lynch
his attorney promised him 10-years regardless if the amount of
meth was 3000 grams, 6000, grams 10,000 grams she told Mr. Abisia
out of her mouth the he would "only" get the 10-years and not
for him to "object" to anything in the PSI because it did not
matter how many grams the Meth was in the (PSI). "When a defend-
ants allegations are based on facts outside the record, an evid-
entiary hearing is required". Frazer v. United States, 18 F. 3d.
778 (9th Cir. 1994). In the case at bar an evidentiary hearing
is a "must", or Abisia be granted relief and released from fed-
eral custody because he has already served a full 10-year sent-
ence.

As with other contracts, provisions of plea agreements are
occasionally ambiguous; the government "ordinarily must...

35

bear responsibilty for any lack of clarity." De La Fuente, 8 F. 3d. at 1338, citing from United States v. Anderson, 970 F. 2d. 602, (9th Cir. 1992). amended 990 F. 1163 (1993); United States, v. Read, 778 F. 2d. 1437, 1441 (9th Cir. 1985).

Construing ambiguities in favor of the defendant makes sense in light of the parties respecttive bargaining power and expertise. De L Fuente, at 1338. Notwithstanding the specific promise that the government would recommend that Mr. Abisia received the minimum term of incarceration recommended by the sentencing guidelines, at sentencing hearing the assistant United States Attorney who prosecuted the case twice breached the agreement.

First, he failed at all to recommend that Mr. Abisia serve the minimum sentence under the guidelines, and instead argue for the maximum sentence allowable under the guidelines. Second, he failed to move for a downward departure from the Guidelines arguing that Mr. Abisia had not been truthful in his cooperation.

Specifically, the government cited the two instances wherein Mr. Abisia moved to withdraw his plea agrement, and cited one sentence from the voluminous transcript of Mr. Abisia's grand jury testimony. Also see copy of plea agreement exhibit_C NOTE: More importantly, at no time did the government give any notice to Mr. Abisia or his counsel that it did not intend to recommend the minimum sentence under the guidelines, that it did not intend to move for a downward departure under the guidelines, or that it took issue with any portion of Abisa's grand jury testimony.

36

In fact, the grand jury transcrpt indicates no instance where
the government challenges any of the testimony as untruth-
ful. At the sentencing hearing, the government put on no wit-
nesses who could attest to the untruthfulness of Mr. Abisia.
Nor did the government show that Abisia's co-operation in setting
up and carrying out a controlled buy which netted the arrest of
"Miranda" was in any way negated by any subsequent attempts to
withdraw his guilty plea, or by any "con-cooperation" from
Abisia. The Court in announcing the sentence, stated that Mr.
Abisia did "cooperate with the government in bringing about
the prosecution of one of his suppliers, "Miranda", and in doing
so, removing at least one source of drugs from Guam.

The court proceeded to sentence Mr. Abisia to a term of
imprisonment in the minimum range as recommended by the pre-sent-
ence Report. Counsel objected that the sentence was not in acc-
ord with the plea agreement or what Abisia understood, that he
had not lied to the grand jury, and that his sentence should
be within the minimum range.

The court overruled the objection based on the government's
evaluation of the "defendant's failure to cooperate".

## THE JUDGE 'S KNOWLEDGE OF THE PROMISE IS NOT RELEVANT:

The <u>Santobello</u>  Court also made clear that is irrelevant
whether the judge knew of the prosecutor's plea-agreement promise
stating:  **"We need not reach the question of whether the
sentencing judge would or would not have been
influenced had he known all the details of the
negotiations for the plea. He stated that the
prosecutor's recommendation did not influence
him and we have no reason to doubt that. Nev-
ertheless, we conclude that the interests of
justice and appropriate recognition of the...**

37

> duties of the prosecution in relation to
> promises made in the negotiation of pleas of
> guilty will be best served by remanding the
> case to the state courts for further consideration.

The need for remand regardless of what the judge might or might

not have known as a result of reading the plea agreement

or otherwise is explained in <u>Correala v. United States</u>, (1st

Cir. 1973), 479 F. 2d. 944, 949.

> The reason is obvious; it is the defendant's
> Rights which are being violated when the plea agree-
> ment is broken or meaningless. It is his waiver
> which must be voluntary and knowing. He offers the
> waiver not in exchange for the actual sentence or
> impact on the judge, but for the prosecutor's
> statements in court. If they are not adequate, the
> waiver is ineffective.

More recently and in a case that is directly on point with

the facts in the instant case the government sought to disavow

its duty to make a favorable sentencing recommendation in <u>United

States v. Peglera,</u> (4th Cir. 1994), 33 F. 3d.412. The Court

Held: "Peglera maintains that the government breached the plea
agreement by failing to recommend a sentence at the low
end of the guideline range. Peglera points to a provision
in the plea agreement stating that the government agrees
to recommend a sentence at the low end of the guideline
range". Given the express inclusion of this term in the
plea agreement, there would seem to be little question
that the government's argument at sentencing constituted
a breach.

When faced with the district court's recognition of the
term cited above, the government first responded by deny-
ing its existence. Now that the provision's inclusion in
the agreement has been acknowledge, the government pre-
sents two arguments as to why re-sentecing is not requir-
ed. First, the government contends that since the district
court was already well aware of the plea bargain, the
government's failure to recommend a sentence at the low
end of the guideline range had no effect on the ultimate
middle-range sentence. This argument is without merit.
In <u>Santobello</u>, the Supreme Court remanded the case for
resentencing even though the sentencing judge stated that
he was not influenced by the prosecutor's violation of..

38

the plea bargain. See Santobello, 404 U.S. at 262, 92
S. Ct. at 499. Courts have held that resentencing is req-
uired under Santobello, regardless of the judge's aware-
ness of the government's real position as indicated in
the plea agreement. See e.g. United States v. Kurkculer,
(1st Cir. 1990), 918 F. 2d. 295, 302. Accordingly the
district court's understanding of the plea agreement's
actual terms will not excuse the government's failure
to live up to its end of the bargain. Id. at 414.

## THE AGREEMENT WAS BREACHED BY STATEMENT AS WELL AS BY SILENCE:

The prosecutor breached his covenant to recommend the min-
imum sentence under the sentencing guidelines in two ways. First,
the government was under an affirmative duty to recommend the
minimum sentence of (Ten-years). "Which Mr. Abisia has already
served" so far". Second, the government, in conjunction with
the minimum recommendation, was under an affirmative duty to
recommend downward departure from that ten-year sentence.

The government failed to make the recommendation for a
minimum term of incarceration, and it remained silent as to the
motion for downward departure. The government's refusal to make
either motion can only be deemed as retaliation for defendant's
two motions to withdraw his plea agreement. The vindictiveness
of the government's failure and refusal to abide by the plea
agreement cannot be related to any legitimate end.

The government cannot rely on the defendant's motions to
withdraw his plea agreement, because Abisia had already fulfill-
ed his bargain by cooperating with federal investigators and
testifying at the grand jury. Asubstantial assistance motion is
based not on future assistance, but on assistance already pro-
vided. U.S. v. khoury, 62 F. 3d. 1138, 1142 (9th Cir. 1995);
U.S. v. Treleaven, 35, F 3d. 458 (9th Cir. 1994).

39

The federal courts have authority to review a prosecutor's refusal to file a substantial assistance motion and to grant a remedy if the government's refusal was based on unconstitutional motive or not rationally related to any legitimate government end. See Wade v. United States, 504 U.S. 181, 112 S. Ct. 1840, 118 Led. 2d. 524 (9192).

Allowing the government to breach a promise that induced a guilty plea violates due process. Margalli-Olvera v. INS, 43, F 3d. 345, 351 (8th Cir. 1994); citing from Mabry v. Johnson, 467 U.S. 504, 509, 104 S. Ct. 2543, 2547, 81 Led. 2d. 437 (1984). In United States v. Goldfaden, (1992), 959 F. 2d. 1324, the Fifth Circuit held that where the government has promised to take "no position" as to an appropriate sentence, it may correct factual misstatements in Appellant's PSI. Id. But it may not go beyond that:

> That its comments referred to guideline levels rather than months or years does not alter the fact that the government suggested a term of imprisonment for appellant. Unlike general descriptions of a defendant's culpability or cooperation, suggestions or positions on the applicability of certain guidelines, enhancements and departures translate directly into a range of numerical figures representing lenghts of prison stay. Such a violation, the court said is plain "error".

## THE CURE IS REMAND FOR RESENTENCING:

The fact that the government's recommendation would not have bound the Court below does not excuse the government's breach." United States v. Thournout, 100 F. 3d. at 596. There are two potential remedies for the government's breach of a plea agreement: remand for specific performance and withdraw of the guilty plea. At bar specific performance is the prefered remdy requested by Mr. Abisia.

40

See <u>Margalli-Olvera v. INS</u>, 43 F. 3d. at 354-55. Here specific performance means that Mr. Abisia gets what he bargained for a "<u>sentence of ten-years</u>" the minimum range under the guidelines and motion for downward departure from the minimum sentence.

## VIOLATION OF THE SIXTH AMENDMENT CONFRONTATION CLAUSE:

Mr. Abisia contends that evidence of drug amounts and transactions that was attributed to him in his (PSI) was all "<u>hearsay</u>". Police (DEA) (FBI) agents obtained statements from other persons to build a case against Mr. Abisia and to even secure a conviction. Mr. Abisia was also enhanced because of hearsay "drug amounts", and evidence of other factors that is considered hearsay.

Mr. Abisia was never given the opportunity to cross-examine any of these witnesses who made statements, and who was also debriefed by the government. All out of court statements. (hearsay). In the (9th Circuit) <u>Crawford v. Washington</u>, is retroactive. First, the principle evil at which the Clause was directed was the civil-law mode of criminal procedure, particularly the use of Ex-parte examinations as evidence against the accused.

The clause's primary object is testimonial hearsay, and interrogations by law enforcement officers fall squarely within that class. Second, the framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination. <u>Crawford v. Washington</u>, (2004), 158 Led. 2d. 177 at 183. The Sixth Amendment's Confrotation Clause provides that...

41

in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him. We have held that this bedrock procedural guarantee applies to both Federal and State prosecutions". Crawford, 158 Led. 2d. 177 at 187, Citing, Pointer v. Texas, 380 U.S. 400, 406, 13 Led. 2d. 923, 85 S. Ct. 1065 (1965). Several authorities have even stated that a suspect's confession could be admitted only against himself, and not against other's he implicated.

One recurring question was whether the admissibility of an unavailable witness's pre-trial examination depended on whether the defendant had had an opportunity to cross-examine him. In 1696, the court of King's Bench answered this question in the affirmative, in the widely reported misdemeanor libel case of King v. Paine, 5, Mod. 163, 87 Eng. Rep. 584. The Court Ruled that even though a witness was dead, his examination was not admissible "where the defendant not being present when it was taken before the mayor had lost the benefit of a cross-examination Id. at 165, 87 Eng. Rep. At 585.

"Written evidence is almost useless; it must be frequently taken ex parte, and but very seldom leads to the proper discovery of truth. It is a rule of the common law, founded on natural justice, that no man shall be prejudiced by evidence which he had not the liberty to cross examine.Id. at 104.

First, the principle evil at which the confrontation Clause was directed was the civil-law mode of criminal procedural, and particulary it's use of ex parte examinations as evidence against the accused". Crawford, 158 Led. 2d. at 192.

42

Various formulations of this core class of testimonial statements exist: ex parte in Court testimony or its functional equivalent that is material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pre-trial statements that declarants would reasonably expect to be used prosecutorially.

Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." Crawford, 158 Led. 2d. at 193. To be sure, the clause's ultimate goal is to ensure reliability of evidence. The clause thus reflects a judgement not only about the desirability of reliable evidence (a point on which there could be little dissent).

But about how reliability can best be determine. Courts have invoked Roberts to admit other sorts of plainly testimonial statements despite the absence of any opportunity to cross-examine. See United States v. Aguilar, 295 F 3d. 1018, 1021-1023, (CA9 2002) (plea allocution) showing existence of a conspiracy).

Like in the case at bar, because Mr. Abisia pleaded guilty to Conspiracy to possess and distribute "meth". Other Courts routinely rely on the fact that a prior statement is given under oath in judicial proceedings. E.g. Gallego, Supra, at 168 (plea, alluccution); Papa-John, Supra, at 1120 (grand jury) testimony).

That inculpating statements are givin in a testimonial setting is not an antidote to the confrontation problem, but rather the trigger that makes the clause's demands most urgent. It is not enough to point out that most of the usual safeguards of the adversary process attend the statement, when the single safeguard missing is the one the Confrontation Clause demands.

43

## INEFFECTIVE ASSISTANCE OF COUNSEL:

The adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of an advocate". United States v. Cronic, 466 US 648 at 666; citing Anders v. California, 386 US 738, 18 Led. 2d. 493, 87 S. Ct. 1396 (1967). At bar, Counsel failed this test as Mr. Abisia'a "advocate" during the change of plea. She advised Abisia to shut up keep his mouth closed, and even after she advised him to do so she in turn "never once explain to the court in full detail what happen between government's officials and Abisia (coercion).

The Court asked counsel over and over again was there any "coercion", counsel still did not bring this issue to the Courts attention. See exhibit-D change of plea transcripts pages-7-15. The only thing Miss Lynch said to the court in in regard to the coercion claim was that quote: there may be a Bivens action later on".

See exhibit- E change of plea transcripts page-9. It's a mystery why Miss Lynch would even hold back this type of important information from the court knowing how important of a factor this was in regard to her clients case, and the Court's determination in Abisia's "Substantial assistance".

Had the Court been advised of what actually happen with the "coercion" issue Abisia may have receive his 10-years as agreed upon in the plea agreement. Because Miss Lynch failed to bring this issue to the Court at the change of plea and moreover, at sentencing Mr. Abisia's sentence was increased. To elaborate further had the sentencing court been aware of the...

44

"coercion" issue there is a strong probability that Abisia

would have received the 10-years he signed for and nothing

more. Miss Lynch performance "prejudice" the defense and because

counsel failed to argue the coercion issue Abisia's sentence was

increased. "The amount by which a defendant's sentence is increas-

ed may possibly be a factor to consider in determining whether

counsel's performance in failing to argue the point constit-

utes ineffective assistance of counsel." Glover v. United States,

(2001) 531 US 198 at 605.

Mr. Abisia and the government came into an agreement of

a 10-year sentence. At sentencing Mr. Abisia received 30-years

and has been incarcerated for 9½ as to date. "Our jurisprudence

suggest that any amount of actual jail time has Sixth Amendment

sigificance". Glover, 531 US 198 at 611.

Here in this case Abisia's Sixth Amendment Rights were vio-

lated because Miss Lynch did not act as the role of advocate.

She refuse to argue the coercion issue. Counsel's ineffective-

ness did rise to a level of constitutional deprivation for

Abisia. See Strickland v. Washington, 466 US 668, 104 S. Ct.

2052, 80 Led. 2d. 674 (9184).

Abisia has demonstrated that counsel's representation fell

below an objective standard of reasonableness". Strickland, 466,

US at 688, 104 S. Ct. 2052. Abisia was prejudice by counsel's

deficient performance because he received a larger sentence. Id.,

at 687, 104 S. Ct. 2052.

Had counsel brought the coercion issue to the court's

attention she could have argued that...

45

based on this alone the agreement for 10-years should stand and that her client should only get the 10-years. Abisia received 30-years instead and counsel really had no defense to present on Abisia's behalf to prevent him from receiving such a stiff sentence.

Had she argued the coercion to the court there is a reasonable probability that the result of the proceedings would have been different. Id. at 694, 104 S. Ct. 2052.

## COUNSEL FAILED TO OBJECT AND ARGUE AT SENTENCING THE DRUG AMOUNT IN THE (PSI).

Miss Lynch, and Mr. Abisia were present when the probation officer prepared the report. Abisia was sentence based on 3000, grams of "Meth" that was recommended by the probation officer. Abisia advised Counsel that he wish to object to that amount because he had nothing to do with that much Meth.

He felt he was not responsible for that large amount of Meth, moreover, he contends that although he pled guilty becuase of counsel advice he still objects to that amount. Miss Lynch told Abisia to don't worry regardless if it's 3,000 grams or 10,000 grams his sentence would still be 10-years.

Now how could this be? The difference in 3000, grams and 10,000 grams is "Astronomical". Abisia believed her and said nothing and more importantly neither did she. Clearly, Abisia did not receive the effective assistance of counsel, which the Constitution guarantees. The result Abisia entered his guilty plea believing that he would get only the 10-years. The simple fact is that Abisia was misled by "erroneous" advice.

46

The judgement of conviction must be vacated when it appears
as here that the guilty plea would never have been tendered
if the defendant had been properly _advised_ by his lawyer".
See _Strader v. Garrison_, 611 F 2d. 64 (1979).

When the misadvice of the Lawyer is so gross as to amount
to a denial of the Constitutional Right to the effective ass-
istance of counsel, striking the sentence is appropriate. De-
privation of the Constitutional Right cannot be left unredress-
ed. Abisia was prejudice pursuant to the principles of _Strick-_
_land_, and counsel was clearly ineffective. Miss Lynch advised
Abisia to don't worry about the amount of Meth when they both
met with probation. Miss Lynch statements are to be considered
outside the record. "District Court "_must_" hold evidentiary
hearing on motion to vacate when petitioner's allegations are
based on facts outside the record". _Frazer v. U.S._ 18 F. 3d.
778 at 786 (9th Cir. 1994).

Here at bar, the facts in this multi-jurisdictional pet-
ition alone should warrant a hearing in this matter. Mr. Abisia
is not skilled in the Science of Law, and Miss Lynch pursuant
to the United States Constitutions Sixth Amendment was suppose
to provide Mr. Abisia with advocacy. She took an oath with the
bar also to uphold and abide by the ethic Rules of professional
conduct. Miss Lynch violated these Rules and moreover, she de-
nied Mr. Abisia his Sixth Amendment Right to effective assist-
ance of counsel. (HIS SIXTH AMENDMENT RIGHT). Because of her
ineffectiveness he has be deprived of his liberty, away from
his family and children for 9½ years on a 30-year sentence.
With all due respect to this most Honorable Court for the gov-
ernment not to give this man 10-years was an injustice.

47

## WAIVER OF RELIEF UNDER §2255 AS PROCEDURAL BAR:

Upon advice of his attorney, Miss Lynch, Abisia entered into a plea agreement with the Government that contained a very general waiver to attack his sentence under a claim made on an issue cognizable on §2255. Abisia did specifically retain the right to (effective) assistance and representation of counsel.

### ARGUMENT AND CITATION OF AUTHORITY

Petitioner Abisia specifically retained, as part of his plea agreement, right to counsel. The U.S. Supreme Court has held that assistance of counsel must be effective assistance, or it is considered no assistance of counsel. "To prosecute the appeal, a criminal appellant must face an adversary proceeding that -- like a trial -- is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant -- like an unrepresented defendant at trial -- is unable to protect the vital interests at stake. To be sure, respondent did have nominal representation when he brought his appeal. But nominal representation on an appeal as of right -- like nominal representation at trial -- does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." Evitts v. Lucey, 469 U.S. 387, at 396, 105 S.Ct. 830, 83 L.Ed.2d. 821, at 830. Abisia, like Lucey, had nominal representation at sentencing and on appeal. Such nominal representation can be nothing but ineffective in Abisia's case, and therefore, unconstitutional. Abisia will prove this all through is petition for post-conviction relief. Abisia has established in the

48

Facts Of The Case, that his attorney was deficient in his perfor-
mance in the following manner: 1.) She provided erroneous and mis-
leading advice which caused Abisia to establish his facts at his
plea hearing and sentencing on direct appeal to preserve his claim
and prevented Abisia from being granted a substantial departure at
sentencing. Counsel Miss Lynch advised Abisia to dismiss his mo-
tion to withdraw his guilty plea. Which would have been of <u>great</u>
benefit for Abisia had counsel pursued Abisia's argument diligently.
That he was coerced by the FBI to plead guilty. The Court consist-
ently asked counsel and Abisia was he "coerced", Abisia specific-
ally told counsel that he wanted to explain what happened and that
he was "coerced" and threatened. That the FBI made the threats in
regard to his wife, and small child. Counsel told Abisia, to quote:
"Shut up, and keep your mouth closed", let me do all the talking.
Counsel advised the Court that she had discussed everything with
Abisia and that Abisia still wanted to go forward with the <u>dismissal</u>.
However, counsel did state on the record, quote: "It doesn't mean
that there may not be a "Bivens" Action out later on certain issues.
See Exhibit ___D___ Change of Plea p. <u>9.</u> .

In regard to ineffective assistance of counsel and plea agree-
ment waivers, some Circuit Court of Appeals has held, "However, we
have previously noted, without deciding the issue, that waivers of
rights to appeal may not apply to ineffective assistance of coun-
sel claims." See <u>United States v. Wilkes</u>, 20 F.3d. 651, 653 (5th.
Cir.1994)(noting that waiver of post-conviction relief in plea
agreement may not apply to collateral attacks based on ineffective
assistance of counsel)," <u>U.S. v. Henderson</u>, 72 F.3d. 463, at 465,
(5th.Cir.1995).

Petitioner Abisia is not an attorney, has no training in the law, and was completely unaware, when he waived his right to challenge §2255 claims (upon advice of his attorney) that §2255 is the legal vehicle by which an ineffective assistance of counsel claim is made, since direct appeal (§3742) is not meant to utilize such claim. Abisia emphatically states, that at no time before, or after the plea agreement was signed, did his attorney, Miss Lynch, ever say anything that even remotely resembled the following: "This §2255 thing that you're giving up is actually the only way you have to remedy anything in your case that I (Miss Lynch) might foul up." Abisia states that no one would knowingly place themselves in such a position, certainly not himself. Indeed, had Abisia been aware of this fact, he would not have voluntarily waived his right to bring an action under §2255. Which therefore, renders his waiver of an ineffective counsel claim under §2255 unknowing and involuntary. Dismissal of Abisia's petition for post-conviction relief under jurisdiction granted by All Writs Act is inappropriate in light of the facts that support Abisia's ineffective assistance of counsel claim. "Dismissal of a section 2255 motion on the basis of a waiver in the plea agreement is inappropriate when the defendant's claims of ineffective assistance relate to the negotiation of, and entry into, the plea agreement and waiver." DeRoo v. U.S., 223 F.3d. 919, at 924 (8th.Cir.2000). Abisia again notes, he does not challenge his entire plea agreement, only the unknowing and involuntary waiver of a §2255 claim of ineffective assistance of counsel cognizable under §2255.

As a general matter, therefore---...---an informed and voluntary waiver of post-conviction relief is effective to bar such relief. Such a waiver may not always apply to a collateral attack

50

based upon ineffective assistance of counsel, see United States v. Abarca, 985 F.3d. 1012, 1014 (9th.Cir.1993)." U.S. v. Wilkes, 20 F.3d. 651, at 653 (5th.Cir.1994). The Eighth Circuit Court of Appeals as well as other circuit courts have held, there is no absolute bar to an ineffective assistance of counsel claim under §2255. "Other courts agree that a waiver of section 2255 rights does not automatically preclude a defendant from raising ineffective assistance of counsel claims in a post-conviction motion. See United States v. Henderson, 72 F.3d. 463, 465 (5th.Cir.1995), DeRoo v. U.S., 223 F.3d. 919, at 925 (8th.Cir.2000).

Petitioner Abisia now finds himself in what can be described as a "catch 22" situation. A situation where the unprofessional, substandard, inadequate, and ineffective assistance of counsel provided during the guilty plea, sentencing, stages of his case, has caused him to receive an illegal/unconstitutional sentence that will take extraordinary measures to correct. Because of the ineffective assistance of counsel involved in Abisia waiving his §2255 rights in an unknowing and involuntary manner, this Court must sever the waiver from his plea agreement in order to correct the illegal/unconstitutional sentence. "Waivers preserve the finality of judgments and sentences, and are of value to the accused to gain concessions from the government." "However, such waivers are not absolute. For example, defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of the agreement." DeRoo v. U.S., 223 F.3d. 919, at 923 (8th.Cir.2000).

In light of Abisia's illegal, constitutionally defective sentence, which he received through ineffective assistance of counsel,

51

and by waiving §2255 rights to appeal in an unknowing and involuntary manner, the Court must assume jurisdiction of Abisia's petition by severing the waiver from the plea agreement and correct the sentence. "Implicit in any waiver is the assumption that the sentence imposed will be consistent with the applicable statutes and sentencing guidelines. A waiver of that assumption must be explicit; it will not be deemed implicit in a general waiver. As always, any waiver, full or partial, will only be valid if knowingly and voluntarily made by the defendant." U.S. v. Capaldi, 134 F.3d. 307, at 308 (5th.Cir.1998).

Abisia's waiver of §2255 claims was not made in a knowing, informed, or intelligent manner because Abisia had no way of knowing he would need to raise an ineffective assistance of counsel claim in order to correct his illegal/unconstitutional sentence. "As an initial matter, I do not think that a defendant can ever knowingly and intelligently waive, as part of a plea agreement, the right to appeal a sentence that has yet to be imposed at the time he or she enters into the plea agreement; such a "waiver" is inherently uninformed and unintelligent." U.S. v. Melancon, 972 F.2d. 566, at 571 (5th.Cir.1992). Abisia retained the right to direct appeal (§3742), but had no way of knowing he would be deprived of this right by the ineffective assistance of counsel and refusal to appeal his sentence by Miss Lynch, his attorney. Waiving his right to use a §2255 claim.

Abisia has proven the claims of ineffective assistance of counsel set forth in his petition, to a degree, that if not accepted as true by the Court, then the Court must order an evidentiary hearing to allow Abisia the opportunity to prove the facts in his

52

favor on the preponderance of evidence standard. Abisia has established that he has been prejudiced as a result of the facts and claims he has set forth.

**CORAM NOBIS:**     **JURISDICTION & VENUE**

Petitioner Abisia brings this action under 28 U.S.C. §1651, All Writs Act - Coram Nobis. "If there be error in the process... it may be reversed in the same court, by writ of error coram nobis." U.S. v. Morgan, 346 U.S. 502, at 508, 74 S.Ct. 247, at 251 [FN9] (1954). "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." **28 U.S.C. §1651(a) Writs.** "The writs have been abolished in federal civil practice, Fed.R.Civ.P. 60(b), but coram nobis is still available in criminal matters under the All Writs Statute, 28 U.S.C. §1651(a). U.S. v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954)." Puente v. United States, 676 F.2d. 141, at 145 [FN2] (5th.Cir.1982). "Such a motion is a step in the criminal case and not, like habeas corpus where relief is sought in a seperate case and record, the beginning of a seperate civil proceeding. Kurtz v. Moffit, 115 U.S. 487, 494, 6 S.Ct. 148, 149, 29 L.Ed. 458." United States v. Morgan, 346 U.S. 502, at 506, 74 S.Ct. 247, at 250, 98 L.Ed. 248 [FN4] (1954). "This section restates, clarifies and simplifies the procedure in the nature of the ancient writ of error coram nobis. It provides an expeditious remedy for correcting erroneous sentences without resort to habeas corpus." United States v. Hayman, 342 U.S. 205, at 218, 72 S.Ct. 263, 96 L.Ed. 232, at 241 (1952). The district court has jurisdiction in the matter of petition for writ of coram nobis and the

53

U.S. District Court for the Territory of Guam is the proper venue to hear the matter of Abisia's petition under 28 U.S.C. §1651, coram nobis, as it is the trial/sentencing court.

TIMELINESS OF PETITION:

Abisia brings this petition for writ of coram nobis in a timely manner as there being no time limitation on a properly filed petition, prepared and submitted to the court with reasonable diligence. "The writ of coram nobis....It was allowed without limitation of time for facts that affect the validity and regularity of the judgment, and was used in both civil and criminal cases." United States v. Morgan, 346 U.S. 502, at 507, 74 S.Ct. 247, at 250, 98 L.Ed. 248 (1954). "It has long been recognized that a petitioner seeking coram nobis must exercise "reasonable diligence" in seeking prompt relief." U.S. v. Dyer, 136 F.3d. 417 (5th.Cir.1998).

A prisoner who is uneducated in the procedures and processes of the law cannot be held to a standard of diligence and rate of production as would an attorney. "Lacking money to hire a lawyer, the prisoner must spend considerable time researching the law, preparing the required legal documents, and filing them. Sometimes years pass before the prisoner discovers what a lawyer could have told him in weeks..." Johnson v. Avery, 393 U.S. 483, at 494, 89 S.Ct. 747, 21 L.Ed.2d. 718, at 726 n.10.

STANDARD FOR CORAM NOBIS RELIEF:

In their dissenting opinion, Justice Minton, Chief Justice Jackson, and Justice Clark recognized a standard for the acceptance of a petition for writ of coram nobis. The standard these Justices set forth, if applied to Petitioner Abisia, would allow this Court to grant the relief he has requested within his petition.

54

"The writ issued at common law to correct errors of fact unknown to the court at the time of judgment, without fault of the defendant, which, if known, would probably have prevented the judgment. The probability of a different result if the facts had been known is a prime requisite to the success of the writ." United States v. Morgan, 346 U.S. 502, at 516, 74 S.Ct. 247, at 255, 98 L.Ed. 248 (1954).

Abisia believes that had the true facts been known at the time of his sentencing it would have prevented the judgment, as the district court, in its wisdom, would never have given him an 360 month sentence.

Finally, Abisia has established that his sentence would certainly have been different had the district court been aware of FBI coercion, and all the true facts of his case.

MISCARRIAGE OF JUSTICE

It has been established that a serious miscarriage of justice has occurred in Abisia's case and sentencing. When a miscarriage of justice occurs, such as in Abisia's sentence, writ of coram nobis should issue. "..., we take cognizance of the Supreme Court's admonition in Morgan, which we again emphasized in Marcello, that coram nobis should issue to correct only errors which result in a complete miscarriage of justice." 876 F.2d. at 1154. U.S. v. Dyer, 136 F.3d. 417, at 430 (5th.Cir.1998).

ADVERSE EFFECT OF ERROR UPON PETITIONER (PREJUDICE)

The Fifth Circuit has set their standard in coram nobis proceedings to require a petitioner to establish that 1) his fundamental rights were violated; and 2) he is, or will experience an adverse effect from the violation of his rights. "What is critical

55

in this case is the fact that a collateral attack upon a criminal conviction demands a high standard of proof by the petitioner that fundamental rights were violated, and also petitioner must show some present or prospective adverse effect. Cline v. U.S., 453 F.2d. 873 (5th.Cir.1982)." <u>Garcia-Trigo v. United States</u>, 671 F.2d. 147, at 148 (5th.Cir.1982).

VIOLATION OF FUNDAMENTAL RIGHTS:

It has been clearly and completely established that Abisia's fundamental rights have been violated. Abisia has suffered violation of his Constitutional right to due process under the Fifth Amendment, right to equal protection of the law under the Fifth Amendment, and right to effective assistance of counsel under the Sixth Amendment. A complete review of Abisia's petition and this memorandum of law clearly shows and describes the above noted violations of fundamental rights in detail. No further mention here is necessary.

CURRENT INCARCERATION NOT BAR TO CORAM NOBIS RELIEF:

Abisia acknowledges that writ of error, coram nobis, is generally reserved for sentences which have been previously served, but asserts that coram nobis remedy is not barred from being utilized by a prisoner who is still serving the sentence which is being attacked. "Furthermore, coram nobis, normally lies only when to petitioner is no longer in federal custody. ...and, therefore, is open to a prisoner only when his statutory remedies are unavailable or inadequate." <u>Correa-Negron v. United States</u>, 473 F.2d. 684, at 685 (5th.Cir.1973). Abisia asserts jurisdiction under coram nobis should the Court deem any of the other jurisdictions in which to entertain his petition improper, and therefore, making other statutory remedies unavailable. Other Court of Appeals use of the

56

words "even though" is its opinion of Cline implies that a sentence
currently being served is subject to coram nobis relief. "As was
indicated in United States v. Morgan, supra, a writ of error coram
nobis is an available remedy to correct fundamental errors in a
criminal case, even though the sentence has been served. Rodgers v.
United States, 451 F.2d. 562 (5th.Cir.1971); Taylor v. Beto, 433
F.2d. 979 (5th.Cir.1970); Lujan v. United States, 424 F.2d. 1053
(5th.Cir.1970)." Cline v. United States, 453 F.2d. 873, at 874
(5th.Cir.1972). The D.C. Circuit Court of Appeals' more recent use
of such language affirms Abisia's availability of remedy through
writ of coram nobis. "The Court held that the All Writs Act, 28
U.S.C. §1651(a) (1982), authorized the district court to entertain
this motion pursuant to the common law writ of coram nobis, which
permits a defendant to collaterally attack his conviction even when
he is no longer in custody." U.S. v. Ayala, 895 F.2d. 425, at 427-
28 (D.C.Cir.1990). See 346 U.S. at 506-10, 74 S.Ct. at 249-52.

The Supreme Court has said about the writ of coram nobis, "It
has been used, in the United States, with and without statutory
authority but always with reference to its common law scope -- for
example, to inquire as to the imprisonment of a slave not subject
to imprisonment ... failure to advise of right to counsel. [FN14]."
United States v. Morgan, 346 U.S. 502, at 508, 74 S.Ct. 247, at 251,
98 L.Ed. 248 (1954). The Tenth Circuit Court of Appeals has noted,
"We note that 28 U.S.C. §2255 is not a bar to this motion, in spite
of the fact that the defendants are currently in custody." See 346
U.S. at 511, 74 S.Ct. at 252-53." U.S. v. Dawes, 895 F.2d. 1581,
at 1582 (10th.Cir.1990).

Abisia's claims of ineffective assistance of counsel are

57

cognizable under coram nobis and he is entitled to relief. "The remedy of coram nobis "should issue to correct errors which result in a complete miscarriage of justice." Id. (citing Morgan, 346 U.S. at 512, 74 S.Ct. at 253). [2] In United States v. Drobny, 955 F.2d. 990, 996 (5th.Cir.1992), we noted that the standard for coram nobis relief was more "demanding" than the cause and prejudice standard for habeas corpus relief under 28 U.S.C. §2255. Without setting a more specific standard for coram nobis relief, we stated that, "[u]nder Morgan, if Drobny could prevail on his ineffective assistance of counsel claim, he would be entitled to relief even under the rigorous standard of coram nobis." Id. Thus, if Castro succeeds on his claim for ineffective assistance of counsel, then under the law of this circuit, he is entitled to coram nobis relief." U.S. v. Castro, 26 F.3d. 557, at 559 (5th.Cir.1994).

Abisia has certainly made a colorable showing of ineffective assistance of counsel under the prevailing Ninth Circuit standards. One may receive ineffective assistance of counsel even though the proceedings have not been a farce or mockery. A review indicates that this Court involve an inquiry into the actual performance of counsel in conducting the defense and a determination whether reasonably effective assistance was rendered based on the totality of the circumstances and the entire record. After review of the record and entire circumstances of Abisia's plea and sentencing it can only be concluded that Abisia's claim of ineffective assistance of counsel is cognizable under coram nobis and that he is entitled to coram nobis relief.

NO OTHER REMEDY AVAILABLE:

Abisia waived all his other rights to appeal in the belief

58

that he would receive a lower sentence. It is apparent that his waiver is unknowing, uneducated, and therefore involuntary. And, it should be noted that Abisia did not waive his right to counsel. Inclusive to the right to counsel is the right to effective counsel.

Even if certain rights have been waived, a method to achieve justice must remain. The Fifth Circuit Court of Appeals has addressed this by quoting the U.S. Supreme Court in U.S. v. Morgan. "The Court further admonished that "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." Id. at 511, 74 S.Ct. at 252. The writ will issue only when no other remedy is available and when "sound reasons exist[] for failure to seek appropriate earlier relief." Id. at 512, 74 S.Ct. at 253." U.S. v. Dyer, 136 F.3d. 417, at 422 (5th.Cir.1998). Abisia maintains that the remedy of coram nobis is available to him should the Court find no other emedy is available to correct the serious miscarriage of justice which has occurred in Abisia's sentencing. "...coram nobis survives only to the extent that it has not been replaced by statute and, therefore, is open to a prisoner only when his statutory remedies are unavailable or inadequate. See United States v. Morgan, supra; Mathis v. United States, 246 F.Supp. 116 (E.D.N.C. 1965)." "In United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), the Supreme Court held that coram nobis should issue to correct only errors which result in a complete miscarriage of justice. An error of "the most fundamental character" must have occurred and no other emedy be available. Id. at 512, 74 S.Ct. at 253."

59

IN CONCLUSION and after consideration of the pertainent facts and relevant law Abisia has presented, this Court must accept jurisdiction under 28 U.S.C. §1651(a), absent jurisdiction of any other remedy.

## AUDITA QUERELA:          JURISDICTION & VENUE

Petitioner Abisia brings this action under 28 U.S.C. §1651(a), All Writs Act. -Audita Querela. "The writ of audita querela as applied to civil judgments was expressly abolished by amendments to Fed.R.Civ.P. Rule 60(b) effective in 1948. However, because the Supreme Court in United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954) held that writ of coram nobis was still available in criminal proceedings, it is likely that Rule 60(b) did not abolish the writ of audita querela to the extent it might otherwise have been available to attack a criminal conviction. ...for presente purposes we assume, without deciding, that in some set of circumstances audita querela might appropriately afford post-conviction relief to a criminal defendant." U.S. v. Reyes, 945 F.3d. 862, at 865 (5th.Cir.1991). "The First Circuit, in Holder, stated: "We agree with the Ayala and Garcia-Hernandez courts that, if available at all, the writ of audita querela can only be available where there is a legal objection to a conviction, which has arisen subsequent to that conviction, and which is not redressable pursuant to another post-conviction remedy." Holder, supra, 936 F.2d. at 5." Id. at 866, Reyes. In light of all Abisia has presented in this memorandum under Coram Nobis, and the above, jurisdiction and venue would seem to be the same as coram nobis. "A motion for a writ of audita querela seeking vacation of a then

60

otherwise final criminal conviction might perhaps more properly be considered, for presently relevant procedural purposes, as analogous to other postconviction remedies, such as the writs of habeas corpus and coram nobis....we will consider a motion for a writ of audita querela as a subject for these purposes to the procedural rules applicable to habeas corpus relief." Id. at 864 <u>Reyes</u>. Therefore, jurisdiction to entertain this action is within the district court and proper venue is in Abisia's sentencing court, the U.S. District Court for the Territory of Guam.

DEFENSE TO ILLEGAL SENTENCE NOT DISCOVERED UNTIL AFTER JUDGMENT WAS RENDERED:

All throughout the petition and this memorandum Abisia has presented facts that establish he did not discover his defense to his unconstitutional sentence until after his judgment was rendered. It is in such a situation that the writ of audita querela lies. "...the district court held that: 'the writ [of audita querela] was meant only to allow a defendant to present a defense not discovered until after judgment was rendered.'" <u>U.S. v. Reyes</u>, 945 F.2d. 862, at 865 (5th.Cir.1991). Abisia would have received a lesser sentence had the defense he now presents to correct his unconstitutional sentence had been brought to the Court's attention at the time the judgment was rendered, and therefore, this Court can assume lawful jurisdiction under 28 U.S.C. §1651(a) writ of audita querela. The Court would certainly not have given Abisia an unconstitutional sentence had Abisia been able to present to the court his issue in regard to FBI coercion.

NO OTHER REMEDY AVAILABLE:

Abisia may very well find himself in a situation that he is

61

unable to address his constitutional issues through the otherwise normally available post-conviction remedies. Should the Court decide that Abisia is not entitled to relief under any of the forms of habeas corpus, §2241 or §2255, then relief should be granted through a common law writ under 28 U.S.C. §1651(a), which would include audita querela. The U.S. Supreme Court has held, "The Court rejected the contention that 28 U.S.C. §2255, which affords collateral relief to federal prisoners, furnishes the exclusive federal postconviction remedy. See 346 U.S. at 510-11, 74 S.Ct. at 252. The teaching of Morgan is that federal courts may properly fill the interstices of the federal postconviction remedial framework through remedies available at common law." U.S. v. Ayala, 894 F.2d. 425, at 428 (D.C.Cir.1990). Thus, according to the D.C. Circuit Court of Appeals' interpretation of the Supreme Court, Abisia, absent other remedy, is entitled to relief under writ of audita querela, in order to correct the miscarriage of justice which has occurred by Abisia having been given an unconstitutional sentence in an illegal/unconstitutional manner. This must be corrected, even if jurisdiction is assumed under the common law writ of audita querela. "Drawing on Morgan, the court "assume[d]" that relief could be afforded under audita querela "if a criminal defendant could show that [such] relief....was necessary to plug a gap in the system of federal postconviction remedies." Id. at 869." U.S. v. Ayala, 894 F.2d. 425, at 428 (D.C.Cir.1990). "The only circumstances, if any, in which the writ could furnish a basis for vacating a criminal conviction would be if the defendant raised a legal objection not cognizable under the existing scheme of federal postconviction remedies." Id. at 426, Ayala.

REMEDY UNDER 28 U.S.C. §1651(a), AS DEFINED BY THE UNITED STATES SUPREME COURT:

"In criminal cases, the writ of coram nobis itself remains available whenever resort to a more usual remedy would be inappropriate." See <u>United States v. Morgan</u>, 346 U.S. 502, 98 L.Ed. 248, 74 S.Ct. 247 (1954). Thus, audita querela and coram nobis having been determined to have similar jurisdictional natures allows the Court to assume jurisdiction under audita querela.

(It should be noted that audita querela's nature in attacking a conviction can, and has, been construed as having the ability to attack a final judgment. A sentence is the result of, and incorporated into a final judgment, therefore it is possible for Abisia to receive relief under audita querela).

## PROCEDURAL BAR: ARGUMENT AND CITATION OF AUTHORITY

Petitioner Abisia contends that should there be an issue raised that he is procedurally, or otherwise barred from the relief he seeks within his petition, he is either relieved of, and, or exempt from any bar to this action through currently established law regarding cause and prejudice, and the correction of a miscarriage of justice, such has occurred in Abisia's case of having had an unconstitutional sentence imposed upon him in an unconstitutional manner. Abisia has established the existence of the miscarriage of justice that has occurred, the cause and prejudice that is involved in the miscarriage of justice, and his due diligence in his attempt to obtain relief from the miscarriage of justice as follows.

Any such procedural default challenge is overcome by a showing of cause and prejudice or that Abisia's claim, if left uncorrected, would constitute a miscarriage of justice. "A defendant who fails

63

to present an issue on direct appeal is barred from raising the issue in a §2255 motion, unless he can show cause for his procedural deault and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed.  United States v. Cook, 997 F.2d. 1312, 1320 (10th.Cir.1993)(citing United States v. Frazier, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d. 816 (1982).  This procedural bar....applies to a collateral attack on his sentence, just as it does to an attack on his conviction....When a defendant fails to challenge his sentence on direct appeal but subsequently attempts to do so under §2255, the courts may take one of several courses of action.  First, if the government raises procedural bar, the courts must enforce it and hold the defendant's claims procedurally barred unless cause and prejudice or a miscarriage of justice is shown." U.S. v. Allen, 16 F.3d. 377, at 378 (10th.Cir.1994).  Thus, the cause and prejudice or miscarriage of justice standard applies to Abisia's collateral attack on the constitutionality of his sentence. And within his petition and this memorandum Abisia has overwhelmingly proven that a fundamental miscarriage of justice has occurred, and also that he has made a colorable showing of cause and prejudice. When viewed in this light, this Court can do nothing but assume jurisdiction and correct Abisia's unconstitutional sentence.

CAUSE AND PREJUDICE:

Abisia has established that he was unable to bring his claims to the court previously through no fault of his own.  And that the factors preventing him from bringing his claims to the attention of the court were his lawyer's fault.  Thus, Abisia has shown cause for bringing his claims to the court in his first attempt at post-conviction relief within this petition.  "But if a petitioner

64

"present[s] adequate reasons for not making the allegation earlier, reasons which make fair and just for the trial court to overlook the delay," he must be given the opportunity to develop these matters in a hearing. Id. at 291-292, 92 L.Ed. 1356, 68 S.Ct. 1049."

McCleskey v. Zant, 499 U.S. 467, at 482, 111 S.Ct. 1454, 113 L.Ed.2d, 517, at 537 (1991). "We have held that a procedural default will be excused upon a showing of cause and prejudice. ...In procedural default cases, the cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim... Murray v. Carrier, 477 U.S. at 488, 91 L.Ed.2d. 397, 106 S.Ct. 2639. Objective factors that constitute cause include.... "a showing that the factual basis for a claim was not reasonably available to counsel." Ibid. In addition, constitutionally "[i]neffective assistance of counsel...is cause." Id. at 486-488, 91 L.Ed.2d. 397, 106 S.Ct. 2639. Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168, 71 L.Ed.2d. 816, 102 S.Ct. 1584 (1982)." Id McCleskey at 544 (113 L.Ed.2d.). Abisia, in his petition has made the showing of constitutionally ineffective assistance of counsel. Misleading statements and erroneous advice of his attorney, Miss Lynch, on direct appeal, her refusal to argue this issue (Coercion) to the Court at the change of plea hearing when asked continually by the Court to explain, she held her tongue and told Abisia to shut up.

In light of the totality of the factors involved and the extent of the constitutionally colorable ineffective assistance of counsel errors by Abisia's attorney, Miss Lynch, this Court can only conclude that Abisia has met the cause standard to excuse him from any

65

delay or potential procedural bar which the government may wish to raise in opposition to this action.

And in regard to the prejudice standard (prong) of the cause and prejudice standard of review, the prejudice element is self-evident in Abisia's unconstitutional sentence. A longer sentence, even by one day, is measurable prejudice. Abisia's sentence, being improper because of breach of plea agreement by the government and Miss Lynch's failure to argue at the change of plea and at sentencing and direct appeal, is certainly a showing of prejudice. Abisia, having made a showing of both cause and prejudice gives this Court jurisdiction to entertain his petition and grant him the relief which he seeks. "It is well settled that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a §2255 motion only if the petitioner can demonstrate either (1) cause and prejudice, or..." U.S. v. Sorrells, 145 F.3d. 744, at 749 (5th.Cir.1998).

Whether this Court finds jurisdiction under 28 U.S.C. §2241, §2255, or §1651(a) coram nobis/audita querela, the cause and prejudice standard applies. "We also know that the cause and prejudice standard applies equally to habeas actions brought under §2241 and §2255. See e.g., Moscato v. Federal Bureau of Prisons, 98 F.3d. 757, 761 (3rd.Cir.1996); George v. Perrill, 62 F.3d. 333, 335 (10th. Cir.1995). It would be anomalous if procedurally defaulted claims falling within the savings clause of §2255 did not also have to meet a "cause and prejudice" standard. It would also be contrary to the legislative history of §2255, well laid out in Wofford, 177 F.3d. at 1239. ("There was no intent to make the §2255 remedy any different in scope from the habeas remedy that had previously been

66

available...").   Sustache-Rivera v. U.S., 221 F.3d. 8, at 17
(1st.Cir.2000).   "The government argues that while it may seem un-
fair to deny Sustache a chance to present his claim through some
form of post-conviction petition, it does not matter because he
does not present even a plausible claim of cause and prejudice." Id.
at Sustache-R. 17.   No matter what form of post-conviction remedy
this Court chooses to apply, Abisia has met the standard overwhelm-
ingly.   And as has been previously presented, coram nobis/audita
querela under 28 U.S.C. §1651(a) are synonymous in nature to §2255
in the requirements pertaining to their respective jurisdictional
elements.

## MISCARRIAGE OF JUSTICE:

Abisia, having made a showing of cause and prejudice, could
forego a showing that his case constitutes a fundamental miscarriage
of justice, therefore overcoming any perceived or actual procedural
bar.   Nevertheless, Abisia asserts the miscarriage of justice claim
to any challenge the government may make that his claim is pro-
cedurally defaulted and barred.

The miscarriage of justice which has occurred overcomes any
procedural bar to the courts review of this petition.   "A defendant
who fails to present an issue on direct appeal is barred from
raising the issue in a §2255 motion, unless he can..., or can show
that a fundamental miscarriage of justice will occur if his claim
is not addressed.   United States v. Cook, 997 F.2d. 1312, 1320
(10th.Cir.1993)(citing United States v. Frady, 456 U.S. 152, 167-
68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d. 816 (1982).   U.S. v. Allen,
16 F.3d. 377, at 378 (10th.Cir.1994).   "If petitioner cannot show
cause, the failure to raise the claim in an earlier petition may
nonetheless be excused if he or she can show that a fundamental

miscarriage of justice would result from a failure to entertain the claim." McCleskey v. Zant, 499 U.S. 467, at 495-96, 111 S.Ct. 1454, 113 L.Ed.2d. 517, at 545 (1991).

In light of all which Abisia has presented heretofore, this Court cannot uphold a procedural bar based upon Abisia's failure to have presented his claim(s) previously (direct appeal).

## SUMMARY AND CONCLUSION IN SUPPORT OF JURISDICTION

Abisia has documented a set of facts that indisputably support his claim to have been given an unconstitutional sentence in an unconstitutional manner.

Further, Abisia has set forth multiple jurisdictional options for this Court's consideration in assuming jurisdiction to entertain his petition. The Court must assume at least one of the following jurisdictional remedies, as Abisia has shown that any one of which could be construed as being applicable: 1) 28 U.S.C. §2241, Habeas Corpus; 2) 28 U.S.C. §2255, Motion To Vacate; 3) 28 U.S.C. §1651(a) All Writs Act, Extraordinary Writ-Coram Nobis-Audita Querela. This Court, in rejecting jurisdiction through §2255 would render that remedy inadequate or ineffective, allowing the Court to assume jurisdiction under §2241. Rejecting both §2255 and §2241 would invoke jurisdiction under §1651(a) Extraordinary Writs-Coram Nobis-Audita Querela, as any other remedies being unavailable.

Failure to assume one of these jurisdictional remedies will, in effect, suspend the Great Writ of Habeas Corpus in direct violation of the United States Constitution. In denying a §2255 motion Circuit Judge Hamilton of the Fourth Circuit Court of Appeals stated, "I concur in the judgment of the court. I write further only to

68

note that Vial has not requested relief by way of habeas corpus under 28 U.S.C. §2241, or by way of an extraordinary writ under the All Writs Act, 28 U.S.C. §1651." In Re Vial, 115 F.3d. 1192, at 1198 (4th.Cir.1997). Abisia has requested relief through all remedies known to him after his extensive, diligent legal research. Abisia invites this Court to assume jurisdiction through any other remedy known to the Court, but unbeknownst to himself.

In assuming its jurisdiction the Court should consider, with some degree of foresight, the methods available to correct Abisia's unconstitutional sentence. The Court could simply vacate Abisia's unconstitutional sentence and resentence him to 10-years as agreed in the plea agreement.

Abisia wishes to apologize to the Court for now bringing forth a somewhat lengthy and complicated petition which, had he received constitutionally effective assistance of counsel, would have already been resolved upon direct appeal. Abisia, being a virtually indigent prisoner, only somewhat now versed and educated in the processes and procedures of the law requests this Court to consider the following when deciding the issues and jurisdictional remedies available in regard to his petition. "It is appropriate to dismiss a pro se's action only if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d. 80 (1957)." Akao v. Shimoda, 832 F.2d. 119, at 120 (9th.Cir.1987). "...it is imperative that a fair opportunity for collateral relief be afforded. An applicant for such relief ought not to be held by the niceties of lawyers' pleadings or be

69

cursorily dismissed because his claim seems unlikely to prove meri-
torious.  That his application is vexatious or repetitious, or that
his claim lacks any substance, must be fairly demonstrated."
Sanders v. United States, 373 U.S. 1, at 22, 83 S.Ct. 1068, 10
L.Ed.2d. 148, at 165 (1963).  Abisia requests, in light of these sta
standards of the manner in which the Court is to review his petition,
that he be given full review of his claim and any possible juris-
dictional avenues in which this Court may afford him the relief he
seeks.

In the name and interests of justice this Court should assume
jurisdiction over Abisia's petition and grant him the relief re-
quested therein.  "The foregoing summary of steps discloses respond-
ent's uncertainty in respect to choice of remedy.  The papers are
labeled as though they sought a common law writ of error coram nobis
but the notice of the motion indicates that an order voiding the
judgment is sought.  In behalf of the unfortunates, federal courts
should act in doing justice if the record makes plain a right to
relief."  United States v. Morgan, 346 U.S. 502, at 505, 74 S.Ct.
247, at 249, 98 L.Ed. 248. (1954).  Abisia has received an unconst-
itutional sentence and justice requires that such a sentence be corr-
ected.  And furthermore, such illegal sentence may be corrected at
any time.  "[T]he question of an unlawful sentence is never barred."
Whitmore v. Arkansas, 495 U.S. 149, at 179 FN 7, 110 S.Ct. 1717, 109
L.Ed.2d. 135, at 160 FN 7 (1990), citing Rosenberg v. U.S., 346 U.S.
273, at 312, 97 L.Ed. 1607, 73 S.Ct. 1152 (1953).

Therefore, in light of all the facts, documentation, and rele-
vant law presented within Abisia's petition for post-conviction re-
lief and this memorandum of law the Court must assume jurisdiction
over the petition.

70

## **RELIEF**

Wherefore these reasons. Petitioner prays this most Honorable Court assume jurisdiction grant him an evidentiary hearing re-sentence him to 10-years with credit for time served and any other relief this court deems is just, fair and proper.

Respectfully Submitted,

Roland Abisia#01292-093
Federal Correctional Inst.
1900 Simler Avenue
Big Spring Texas 79720
Sunrise Unit

## CERTIFICTATE OF SERVICE

I hereby Certify and declare that a true and accurate copy of the foregoing multi-jurisdictional petition was mailed First Class Mail on this _12TH_ day of _DECEMBER_ 2005, to Assistant U.S. Attorney Mark E. Kondas, Suite 502-A Pacific News Bldg. 238 Archbishop Flores Street Agana, Guam 96910.

**EXHIBITS**

FILED
DISTRICT COURT OF GUAM

JUL - 3 1997

MARY L. M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM

* * *

UNITED STATES OF AMERICA,  )
                           )
              Plaintiff,   )
                           )
        vs.                )          CRIMINAL CASE NO. 96-00089
                           )
ROLAND ABISIA,             )
                           )
              Defendant.   )
_____)

TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE JOHN S. UNPINGCO
CHIEF DISTRICT JUDGE

MOTION TO WITHDRAW PLEA AGREEMENT
FRIDAY, MARCH 14, 1997

SENTENCING
TUESDAY, MAY 27, 1997

Wanda M. Miles, C.S.R.
Official Court Reporter
United States District Court
Agana, Guam 96910

AGANA, GUAM; FRIDAY, MARCH 14, 1997; 1:55 P.M.

                              *  *  *

THE CLERK: Criminal Case No. 96-00089, United States of America versus Roland Abisia, Motion to withdraw plea agreement.

Counsel, please state your appearances.

MR. KONDAS: Mark Kondas on behalf of the United States. Sitting with me is FBI Special Agent Kevin Peterson.

MS. LYNCH: Your Honor, Sandra Lynch. We have a substitution of counsel between Mr. Torres and I, signed by Mr. Abisia, that we would request the Court approve at this time.

THE COURT: Okay. Now that substitution of counsel is dated February 19th, but it was only filed today, for the record.

MS. LYNCH: That's correct, Your Honor.

THE COURT: Okay, so you've been on board since that time?

MS. LYNCH: I have been discussing with Mr. Abisia, and through Mr. Torres and with Mr. Torres the case, and Mr. Abisia signed the substitution yesterday.

THE COURT: Okay. Now, will this cause any delay on the motion to withdraw the plea today?

MS. LYNCH: It will not, Your Honor, because my

1 client has agreed to take the plea and continue as is.

2 But, I do want Mr. Torres here to make this perfectly

3 clear and to put Mr. Abisia, put it on the record that he

4 does wish to accept the plea agreement as it stands, and

5 to withdraw his motion to withdraw the plea agreement.

6     THE COURT: Mr. Torres, is this acceptable to

7 you? I know you've signed the substitution. But is that

8 acceptable to you?

9     MR. TORRES: If that's Mr. Abisia's wishes, it's

10 certainly acceptable to me.

11     THE COURT: Okay. Mr. Abisia, you understand

12 that you're changing lawyers here now?

13     THE DEFENDANT: Yes, Your Honor.

14     THE COURT: Okay. Are you satisfied with your

15 new lawyer?

16     THE DEFENDANT: Yes, Your Honor.

17     THE COURT: Have you talked about your case at

18 great length with her?

19     THE DEFENDANT: Yes, Your Honor.

20     THE COURT: In detail?

21     THE DEFENDANT: In detail, Your Honor.

22     THE COURT: Today are you suffering from any

23 pain?

24     THE DEFENDANT: No, Your Honor.

25     THE COURT: Perfectly healthy?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  Thinking clearly?

3    THE DEFENDANT:  Yes, Your Honor.

4    THE COURT:  Okay.  You are aware of what's going

5  on here?

6    THE DEFENDANT:  Yes, Your Honor.

7    THE COURT:  And you've talked it over with both

8  of your lawyers?

9    THE DEFENDANT:  Uh, right, Your Honor.

10    THE COURT:  Okay.

11    Very well.  So, Ms. Lynch, are you prepared to go

12  forward then?

13    MS. LYNCH:  We are, Your Honor.

14    THE COURT:  Very well.  The Court accepts the

15  substitution of counsel at this time.  There's no

16  compelling reason why it should not.  It appears that it

17  will not delay the proceedings.

18    Thank you, Mr. Torres.

19    MR. TORRES:  Thank you, Your Honor.

20    MS. LYNCH:  Thank you, Your Honor.

21    THE COURT:  Now, Ms. Lynch, you and your client

22  can approach the podium for a moment, please, on this

23  motion.  I want to be crystal clear about it; I don't want

24  any misunderstandings.

25    MS. LYNCH:  Absolutely.

1    (Ms. Lynch and the Defendant approach the

2  podium.)

3    THE COURT:  Now, Mr. Abisia, for the record, do

4  you understand that your lawyer is again withdrawing your

5  motion to withdraw your guilty plea?

6    THE DEFENDANT:  Right, Your Honor.

7    THE COURT:  Okay.  You understand that this has

8  happened once before; on October 10th, 1996, your lawyer

9  Mr. Arriola moved to withdraw your guilty plea, and then

10  on the 15th of October the motion to withdraw the plea was

11  withdrawn by you and your lawyer?  Understand that?

12    THE DEFENDANT:  Yes, Your Honor.

13    THE COURT:  Now this is going to be the second

14  time if the Court allows it, it's going to be the second

15  time that you're going to be withdrawing your motion.  Do

16  you understand that?

17    THE DEFENDANT:  Yes, Your Honor.

18    THE COURT:  Okay.  Now, at this time, do you

19  understand that if you go through with this withdrawal of

20  your motion to withdraw -- if you go through with this

21  motion to withdraw the motion to withdraw your guilty

22  plea --

23    MS. LYNCH:  We just wish to dismiss the motion.

24    THE COURT:  Or dismiss the motion.

25    MS. LYNCH:  Yes, Your Honor.

*Wanda M. Miles, C.S.R.*
Official Court Reporter
United States District Court
Agana, Guam 96910

77

1      THE COURT: You're taking me at a little bit of a

2 surprise, so bear with me a little bit. I was prepared to

3 go through this argument here, and this is a little bit of

4 a surprise.

5      Now, do you understand the consequences of the

6 guilty plea?

7      THE DEFENDANT: Yes, Your Honor.

8      THE COURT: You have gone through that step by

9 step with your new lawyer Ms. Lynch?

10     THE DEFENDANT: Yes, Your Honor.

11     THE COURT: Okay. Now you understand the extent

12 of the evidence against you; yes or no?

13     THE DEFENDANT: Yes, Your Honor.

14     THE COURT: Have you discussed the evidence with

15 Ms. Lynch?

16     THE DEFENDANT: Yes, Your Honor.

17     THE COURT: Okay. Are you satisfied that you

18 fully understand what the Government has on you?

19     THE DEFENDANT: Yeah, Your Honor.

20     THE COURT: Okay. Now, if you dismiss this,

21 you're going to be -- are you saying then that the

22 argument that you were forced or coerced by the FBI to

23 plead guilty, that that didn't happen, because they were

24 threatening you, picking up your common-law wife, Ms.

25 Pocaigue?


Case 1:96-cr-00089   Document 62-3   Filed 12/27/2005   Page 14 of 22

1    THE DEFENDANT:  What's that again, Your Honor?

2    THE COURT:  Now, one of the arguments in your

3  motion to withdraw your guilty plea is that you were

4  forced by the FBI to plead guilty, because if you didn't

5  plead guilty then your common-law wife would be picked up.

6    THE DEFENDANT:  Right.

7    THE COURT:  Are you saying that that's not the

8  case?

9    THE DEFENDANT:  That's not the case.

10    THE COURT:  Okay.  And why is that not the case?

11    THE DEFENDANT:  (No response.)

12    THE COURT:  See, I'm trying to consider this

13  because you have made this allegation, and I need to find

14  out about it.  You're saying that's not the case anymore,

15  that they didn't coerce you regarding your wife?

16    MS. LYNCH:  May I interject for a moment, Your

17  Honor?

18    THE COURT:  Yes, please.

19    MS. LYNCH:  What Mr. Abisia and I have discussed

20  is that regardless of how he entered into the plea in the

21  first place, since that time he has had an opportunity to

22  review all of the evidence against him --

23    THE COURT:  Okay.

24    MS. LYNCH:  -- and that it is still in his best

25  interest to accept the plea as written, even though in the

1  beginning he did feel that he was coerced into signing it
2  early and didn't have a chance to review the consequences.
3  We have gone over everything on each side; the
4  consequences of pleading guilty and the consequences of
5  going forward, his rights at trial, the evidence that is
6  potentially out there, what we can do with it in terms of
7  motions to suppress and so forth. And what we have
8  discussed, and I asked him for a decision on this, which
9  way is better, which way is more conducive to his future,
10  his family's future. And he said "even though that's the
11  way I entered into the plea, I would keep it." It doesn't
12  mean that there may not be a Bivens action out later on
13  certain issues, but for now this plea agreement as it
14  stands he is accepting. And the other alternative is to
15  withdraw the plea and hope that the Government would give
16  him a different plea agreement based on what he knows now.
17  And, my understanding --

18          THE COURT:  Well, let's --

19          MS. LYNCH:  -- is that he doesn't want to take
20  that chance.

21          THE COURT:  Okay.  Now, is what she -- is what
22  your lawyer saying, do you agree fully with what your
23  lawyer is saying, Mr. Abisia?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Okay.  You've gone through this a

Case 1:96-cr-00089    Document 62-3    Filed 12/27/2005    Page 16 of 22

1　step at a time, like she's mentioned?

2　　　　　THE DEFENDANT: Yes, Your Honor.

3　　　　　THE COURT: Okay. And the reason I'm asking this

4　is that this change of heart, you know, I don't want to go

5　through this again. Okay? Let's be done with this and

6　proceed on to sentencing.

7　　　　　MR. KONDAS: Your Honor, if I may?

8　　　　　THE COURT: Hang on a minute.

9　　　　　(Pause.)

10　　　　　Yes, Government?

11　　　　　MR. KONDAS: Your Honor, we are prepared to

12　present evidence today to show that Mr. Abisia entered his

13　plea voluntarily and knowingly, and that at no point in

14　time prior to him entering into the guilty plea was he

15　ever forced or coerced by the FBI or any law enforcement

16　officers to plead guilty; that the only reason that he did

17　plead guilty was because he wanted to. And I want to make

18　that absolutely clear --

19　　　　　THE COURT: Well, that's what I'm trying to

20　establish.

21　　　　　MR. KONDAS: And if the Court would like some

22　testimony regarding whether or not the FBI coerced Mr.

23　Abisia into pleading guilty, I am prepared to go forward

24　with that.

25　　　　　THE COURT: See, Ms. Lynch, I think you're

1    realizing the quandary the Court is in now.

2              MS. LYNCH:  I certainly do, Your Honor.

3              THE COURT:  You know, there's this outstanding

4    element out there that can lay the groundwork for another

5    change of heart later on, and I'm trying to find out here

6    whether those things have been resolved.

7              Now, with respect to the FBI coercing him into

8    pleading guilty because his common-law wife would be

9    picked up, let me point out that the common-law wife was a

10   federal fugitive at the time.  And so that seems to be

11   rather absurd that that can be used as a threat when

12   action is already being taken to do that.

13             Now, I need to find out, you mentioned something

14   like a Bivens action.  That's bothersome to the Court.

15   I'm trying to make sure that we keep these folks honest as

16   well.  I have no reason to doubt them, but I need to find

17   out.  Was he coerced or not?  I guess that's what --

18   because if not then, okay, that's a different story.

19             MS. LYNCH:  I understand.

20             THE COURT:  If he was coerced, then let's get to

21   the bottom of it now while we have people here, they're

22   ready to go and we can get to the bottom of it.  So, will

23   you take a moment to consult with your client?

24             MS. LYNCH:  Your Honor, what I've tried to do

25   with Mr. Abisia is to place him in two separate time

1   frames.  At the time frame that he entered into his plea,

2   he felt -- a subjective feeling -- he felt that he was

3   being coerced.  And I've asked him to move forward into

4   this time, right now, if he were offered this same plea

5   agreement today, knowing what he knows now, regardless of

6   how he entered into this plea, would he still accept this

7   plea.  And if that is the case, then we would keep the

8   plea as it is.

9          THE COURT:  Yes.

10          MS. LYNCH:  And that's what we made the decision

11   on.

12          THE COURT:  Okay.  Well, what I need --

13          MS. LYNCH:  But that's fine if we need to inquire

14   further --

15          THE COURT:  Well, yes, I need you to talk with

16   him because what is critical here is at the time of the

17   plea agreement, what is the basis for his subjective

18   impression or opinion that he was coerced, and if there

19   was a basis for that.  We need to clear that because this

20   is a waste of the Court's time.

21          MS. LYNCH:  I can tell the Court two incidents

22   that Mr. Abisia used, but --

23          THE COURT:  Well, I'd like you to discuss with

24   your client first whether there was coercion, if he wants

25   to go forward with that coercion argument, because I want

1    to clear that. Either we allow you to withdraw -- to

2    dismiss the motion to withdraw, which the Court is

3    perfectly willing to do so, but the Court is also bothered

4    by this lingering issue out there. It's got to be one way

5    or the other. I mean, we can't keep repeating this

6    scenario, says six months, three months from now it's a

7    different lawyer coming in to replace you saying, "Oh, I'd

8    like to renew this motion to withdraw." I'm not going to

9    stand for that. I need to get to the bottom of this.

10              So, let's take a 15-minute break. Talk it out

11   with your client.

12              MS. LYNCH: Certainly.

13              THE COURT: Make sure that, you know, we're all

14   -- you know, that this thing is it. Otherwise, let's go

15   forward. Thank you.

16              THE CLERK: Please rise.

17              (Whereupon a recess was taken.)

18              (Proceedings resumed at 2:36 p.m.)

19              THE COURT: Now, Ms. Lynch, have you had an

20   opportunity to consult with your client?

21              MS. LYNCH: I have, Your Honor.

22              THE COURT: Okay. Take the podium please.

23              Now, I've stated earlier the Court's concern

24   about this Bivens idea you mentioned. Could you

25   elaborate?

*Wanda M. Miles, C.S.R.*
*Official Court Reporter*
*United States District Court*
*Agana, Guam 96910*

84

1        MS. LYNCH: Yes, Your Honor.

2            Your Honor, at the time when Mr. Abisia was

3    arrested, he did make some statements. The plea agreement

4    was offered to him very quickly. There was a time frame

5    after a couple of days he was talking to the FBI, his

6    girlfriend was brought in, and he was also, he believes,

7    arrested, and there were inducements by the FBI that if he

8    didn't cooperate certain things would happen, certain

9    things won't happen. In his subjective understanding, he

10   understood some of those things to be threats and

11   coercion.

12           Now, the problem with that is that there's a time

13   frame of about four days that may not be very clear,

14   between the time he accepted the plea agreement and

15   actually signed it, started talking. He talked before the

16   plea agreement, he signed it. He spoke after the plea

17   agreement, he worked with the FBI, he went with them at

18   some point in time. Right away he was appointed am

19   attorney, but after that his girlfriend was brought in.

20   Those days are somewhat confusing, but he still believes

21   that there was some coercion in there, but he's not

22   clear --

23           THE COURT: Whether is was before or after he

24   signed the plea agreement?

25           MS. LYNCH: Yes, Your Honor.

JAY ARRIOLA
477 9731


abisia.ple

FREDERICK A. BLACK
United States Attorney
MARK E. KONDAS
Assistant U.S. Attorney
Suite 502-A, Pacific News Bldg.
238 Archbishop Flores Street
Agana, Guam 96910
Telephone: (671) 472-7332/7283
Telecopier: (671) 472-7334

FILED
DISTRICT COURT OF GUAM
OCT 08 1996
MARY L. M. MORAN
CLERK OF COURT

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 96-00089 |
| Plaintiff, | ) | |
| vs. | ) | **PLEA AGREEMENT** |
| ROLAND M. ABISIA, | ) | |
| Defendant. | ) | |

Pursuant to Rule 11(e)(1)(B), the United States and the defendant, ROLAND M. ABISIA, enter into the following plea agreement:

1. The defendant agrees to waive indictment pursuant to Federal Criminal Procedure Rule 7(b), and enter a guilty plea to an information charging him with Conspiracy to Distribute 3,000 grams of Crystal Methamphetamine aka "Ice", in violation of Title 21 U.S.C. §§ 841(a)(1) and 846.

FORM OBD-183

86

2. The defendant, ROLAND M. ABISIA, further agrees to fully and truthfully cooperate with Federal law enforcement agents concerning their investigation of the importation, possession, and distribution of controlled substances and related unlawful activities, including the disposition of profits from and assets relating to such activities. He agrees to testify fully and truthfully before any grand juries and at any trials or proceedings if called upon to do so for the United States, subject to prosecution for perjury for not testifying truthfully. The United States will make this cooperation known to the Court prior to the defendant's sentencing. The defendant further understands that he remains liable and subject to prosecution for any non-violent Federal, State, or Territorial offenses that he does not fully advise the United States, or for any material omissions in this regard. In return for this cooperation, the United States agrees not to prosecute defendant in the District of Guam or the Commonwealth of the Northern Mariana Islands for any other non-violent Federal offenses now known to the government or which he reveals to Federal authorities.

3. The defendant, ROLAND M. ABISIA, understands and agrees that any and all assets or portions thereof acquired or obtained by him as a direct or indirect result of illegal trafficking in drugs or used to facilitate such illegal activity shall be surrendered to the United States or any lawful agency as may be directed by the Court. The assets to be surrendered include, but

2

are not limited to cash, stocks, bonds, certificate of deposit, personal property and real property.

4. The defendant, ROLAND M. ABISIA, further agrees to submit to a polygraph examination by any qualified Federal polygraph examiner. The defendant understands that such polygraph examinations may include, but will not be limited to, his knowledge of or involvement in unlawful drug related activities, and the identification of any and all assets and conveyances acquired in whole or in part by the defendant or others through unlawful drug related activities or the use of such assets or conveyances to further such unlawful activities. Defendant understands that the government will rely on the polygraph in assessing whether he has been fully truthful.

5. The defendant, ROLAND M. ABISIA, understands that the maximum sentence for Conspiracy to Distribute 3,000 grams of crystal methamphetamine aka "ice" is a term of imprisonment for life a mandatory minimum term of ten (10) years incarceration, and $4,000,000.00 fine, together with any restitution as the court may order, and a $50 special assessment fee. Any sentence imposed shall include a term of supervised release of at least five (5) years in addition to such terms of imprisonment. If defendant cooperates as set forth in Paragraphs 2, 3,and 4, the government will recommend that defendant receive the minimum term of incarceration recommended by the Sentencing Guidelines, and credit for time served, if any. If defendant does not fully

- 8 -

FORM OBD-183
MAY 93

88

cooperate as set forth in Paragraphs 2, 3, and 4, the government will recommend whatever sentence of incarceration within the Guidelines range it may deem appropriate. The government may move for a downward departure if the defendant renders substantial assistance pursuant to Section 5K1.1 of the U.S. Sentencing Commission Guideline Manual, effective November 1, 1995 and 18 U.S.C. § 3553(e). The defendant understands that such motion is within the sole discretion of the government.

The government will recommend a fine within the Sentencing Guidelines range. If defendant is financially unable to immediately pay the fine in full, defendant agrees to make a full disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form (OBD-500) for purpose of fixing a monthly payment schedule. Defendant understands that, by law, interest accrues on any remaining balance of the debt.

6. The defendant understands that the sentencing guidelines apply to this offense. The government and the defendant stipulate to the following facts for purposes of the sentencing guidelines:

a. The defendant was born on June 9, 1960 and is a citizen of the United States of America.

b. If the defendant cooperates with the United States by providing information concerning the unlawful activities of others, the government agrees that any self-incriminating

- 4 -

1   information so provided will not be used against defendant in
2   assessing his punishment, and therefore, pursuant to § 1B1.8 of
3   the sentencing guidelines, this information should not be used in
4   determining the applicable guidelines range.

5       c.   Between 1992 and October, 1996 the defendant
6   procured 3,000 grams of crystal methamphetamine a/k/a "ice" for
7   resale.  During that time period, the defendant recruited others
8   to distribute the 3,000 grams around the Territory of Guam and to
9   collect the proceeds of the sales. On October 24, 1994, the
10  defendant admitted to FBI Special Agent Kevin Peterson that
11  between 1992 and October 1994 he obtained more than 1,000 grams
12  of ice for resale.  On October 8, 1996, the defendant was
13  arrested and had approximately 140 grams of ice on his person.

14      d.   The defendant understands that notwithstanding any
15  agreement of the parties, the United States Probation Office will
16  make an independent application of the Sentencing Guidelines.
17  The defendant acknowledges that should there be discrepancies in
18  the final sentencing guidelines range projected by his counsel or
19  any other person, such discrepancy is not a basis to withdraw his
20  guilty plea.

21      7.   The defendant understands that this plea agreement
22  depends on the fullness and truthfulness of his cooperation.
23  Therefore, defendant understands and agrees that if he should
24  fail to fulfill completely each and every one of his obligations
25  under this plea agreement, or make material omissions or

26

- 8 -

90

FORM OBD-183

intentional misstatements or engage in criminal conduct after the
entry of his plea agreement and before sentencing, the government
will be free from its obligations under the plea agreement; thus
defendant, in addition to standing guilty of the matters to which
he has pled pursuant to this agreement, shall also be fully
subject to criminal prosecution for other crimes, and for the
counts which were to be dismissed.

8. The defendant understands that his sentencing may be
continued, at the sole discretion of the United States, until
after the indictment and trial of any associates involved. This
will also enable the Court to see the full degree of the
defendant's cooperation. The defendant therefore waives any
right he may have to any speedy sentencing and hereby agrees to
any continuance of her sentencing date as it may become
necessary.

9. In exchange for the government's concessions in this
plea agreement, defendant waives any right to appeal or to
collaterally attack this conviction. The defendant reserves the
right to appeal the sentence imposed in this case.

10. The defendant acknowledges that he has been advised of
his rights as set forth below prior to entering into this plea
agreement. Specifically, defendant has been fully advised of,
has had sufficient opportunity to reflect upon, and understands
the following:

- 8 -

a.   The nature and elements of the charge and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;

b.   His right to be represented by an attorney;

c.   His right to plead not guilty and the right to be tried by a jury and at that trial, the right to be represented by counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself, that is, the right not to testify;

d.   That if he pleads guilty, there will not be a further trial of any kind on the charges to which such plea is entered so that by entering into this plea agreement, he waives, that is, gives up, the right to a trial, and that he is waiving all appellate issues that might have been available if he had exercised his right to trial;

e.   That, upon entry of a plea of guilty, or thereafter, the Court may ask him questions about the offenses to which he has pled, under oath, and that if he answers these questions under oath, on the record, his answers may later be used against him in prosecution for perjury or false statement if an answer is untrue;

f.   That he agrees that the plea agreement is voluntary and not a result of any force, threats or promises apart from this plea agreement;

- 7 -

93

1          g.   That he reads, writes and speaks the English

2     language and has no need for an interpreter;

3          h.   That he has read the plea agreement and understands

4     it.

5          i.   The Defendant is satisfied with the representation

6     of his lawyer and feels that his lawyer has done everything

7     possible for his defense.

8

9     DATED:  10/08/96              _____
                                    ROLAND M. ABISIA
10                                  Defendant

11    DATED:  10/8/96               _____
                                    JOAQUIN C. ARRIOLA, Jr.
12                                  Attorney for Defendant

13

14                                  FREDERICK A. BLACK
                                    United States Attorney
15                                  Districts of Guam and CNMI

16    DATED:  10/8/96               _____
                                    MARK E. KONDAS
17                                  Assistant U.S. Attorney

18

19

20

21

22

23

24

25

26

- 8 -

93

FORM OBD-183
MAR 91



# CERTIFICATE OF COMPLETION

ADULT CONTINUING EDUCATION PROGRAM

## ROLANDO ABISIA

## BIG SPRING, TEXAS

LIFESKILLS

March 15, 2005
Date

Signed



# CERTIFICATE OF COMPLETION

### ADULT CONTINUING EDUCATION PROGRAM

## ROLANDO ABISIA

## BIG SPRING, TEXAS
### NATIVE AMERICAN HISTORY

March 18, 2005
_____
Date

Signed



UNICOR, BIG SPRING

Certificate of Completion

THIS WILL CERTIFY THAT

ABISIA 01292-093

HAS SUCCESSFULLY COMPLETED THE CIRRIS TESTER TRAINING CLASS,
AND IS QUALIFIED TO OPERATE THE CIRRIS TESTER.

Tim Cain, Acting Q. A. Manager

March 17, 2005

97




# Howard College

*"Education ... For Learning, For Earning, For Life!"*

## CERTIFICATE OF COMPLETION

This is to certify that

### Rolando Abisia

has satisfactorily completed

### High Reliability Soldering J-STD-100C

PROFESSIONAL IMPROVEMENT

through

CONTINUING EDUCATION

Contact Hours:

CEU: **8.0**

Date: *April 23, 2004*

INSTRUCTOR  Kerry Fryar J001-5330

COORDINATOR OF CONTINUING EDUCATION



# Prison Fellowship Seminar

## Promise Keepers Men's Conference

Presented to    **Roland M. Abisia**

on the    **22nd**   day of   **February**    , **1998**





*Seven Promises of the Promise Keeper*

1. Honor Jesus Christ through prayer, worship, and obedience to His Word in the power of the Holy Spirit;

2. Pursue vital relationships with a few other men understanding that I need brothers to help me keep my promises;

3. Practice spiritual, moral, ethical, and sexual purity;

4. Build strong marriages and families through love, protection, and biblical values;

5. Support the mission of my church by honoring and praying for my pastor and by actively giving my time and resources;

6. Reach beyond any racial and denominational barriers to demonstrate the power of biblical unity;

7. Influence my world, being obedient to the Great Commandment (Mk 12:30-31) and the Great Commission (Mt. 28:19-20).

# Rolando Abisia

has successfully completed

## Drug Education

Federal Correctional Institution
Phoenix, Arizona

August 7, 1998

_M. Escobedo, MA_
Drug Abuse Treatment Specialist

_S. G. Delehanty, Ph.D._
Drug Abuse Program Coordinator

99



# Howard College

*"Education ... For Learning, For Earning, For Life!"*

## CERTIFICATE OF COMPLETION

This is to certify that

### Roland M. Abisia

has satisfactorily completed

### High Reliability Soldering J-STD-100C

Contact Hours:
CEU: *10.0*
Date: *November 14, 2005*

PROFESSIONAL IMPROVEMENT

through

CONTINUING EDUCATION

INSTRUCTOR
Adrian Ayala

DIRECTOR OF WORKFORCE TRAINING



# UNICOR, BIG SPRING



## Certificate of Completion

THIS WILL CERTIFY THAT

ABISIA # 01292-093

HAS SUCCESSFULLY COMPLETED THE PROPER USE OF AIR HEAT GUN
CLASS, AND IS QUALIFIED FOR BASIC OPERATION OF THIS TOOL.



GUZMAN, INSTRUCTOR



WESLEY THIXTON, FOREMAN

GENE AIELLO, FACTORY MANAGER

SEPTEMBER 15, 2005



# Certificate of Completion

## Unicor Big Spring, Texas

Witness that:

__ABISIA 01292-093__

Polarity Traini_____

(Understan_____ity)

has successfully completed all require____ ___ ___ course
and as Proof of Proficiency is hereby awarded this certificate

In testimony this Institute has awarded this certificate
on this 23th day of November 2005

Circuitboard Assembly Foreman _~signature~_          Factory Manager _~signature~_

# Certificate of Completion

## Unicor Big Spring, Texas

Witness that:

### ABISIA 01292-093

has successfully completed all requirements for this course

### ElectroStatic Discharge Training

(Proper Handling of ESD Components & Safegaurds)

and as Proof of Proficency is hereby awarded this certificate.

In testimony this Institute has awarded this certificate
on this 28th day of November 2005

Circuitboard Assembly Foreman _[signature]_          Factory Manager _[signature]_

# Certificate of Completion

## Unicor Big Spring, Texas

Witness that:

**ABISIA 01292-093**

has successfully completed all requirements for this course

**Understanding Ionizer Function & Purpose**

and as Proof of Proficiency is hereby awarded this certificate.

In testimony this Institute has awarded this certificate
on this 28th day of November 2005

Circuitboard Assembly Foreman _(signature)_

Factory Manager. _(signature)_

# Certificate of Completion

## Unicor Big Spring, Texas

Witness that:

**ABISIA 01292-093**

has successfully completed all requirements for this course

## The Use of Digital Multimeter

and as Proof of Proficiency is hereby awarded this certificate.

In testimony this Institute has awarded this certificate
on this 30th day of November 2005

Circuitboard Assembly Foreman _____

Factory Manager _____

# Certificate of Completion

## Unicor Big Spring, Texas

Witness that:

### ABISIA 01292-093

has successfully completed all requirements for this course

## The Identification of Resistors

and as Proof of Proficiency is hereby awarded this certificate.

In testimony this Institute has awarded this certificate
on this 21st day of November 2005

Circuitboard Assembly Foreman _(signature)_

Factory Manager _(signature)_

# MARICOPA SKILL CENTERS

## CERTIFICATE OF VOCATIONAL SKILL TRAINING

A DIVISION OF GATEWAY COMMUNITY COLLEGE

MARICOPA
COMMUNITY
COLLEGES

Awarded to

### ROLAND M. ABISIA

for completion of

## Fundamentals Of Brick Masonry

Date: May 15, 1998

_Instructor_

Assistant Director, Instruction

Phoenix, Arizona

Executive Director, Maricopa Skill Centers

President, GateWay Community College